Davɪᴅ P. Gᴇʀᴄʜᴍᴀɴ

*v.*

Sᴛᴀᴛᴇ ᴏꜰ Tᴇɴɴᴇssᴇᴇ.

(*Nashville,* December Term, 1959.)

Opinion filed February 5, 1960.

Paul D. Welker and Frank J. Runyon, Clarksville, for plaintiff in error.

William D. Grugett, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Gerchman was indicted, tried and convicted of housebreaking and larceny and sentenced to serve a term of not more than three years in the State Penitentiary. He has seasonably appealed, filed briefs, and arguments have been heard. We now have the matter for disposition.

Gerchman was indicted for breaking into the house of a Mr. Peacher and stealing four heaters therefrom on the night of May 1, 1958. On May 9, 1958, a deputy sheriff along with two members of the Criminal Identification Division of Fort Campbell went to the home of Gerchman, who at that time was a Sergeant in the United States Army stationed at Fort Campbell, armed with a search warrant. This search warrant called for the officers to search for certain articles, sheets, a mower, etc., which the authorities at Fort Campbell thought were in Gerchman's home. At the time this search warrant was issued Gerchman was being held by the authorities at Fort Campbell where he had refused to consent to the search of his home and as a result of his refusal the search warrant had been taken out before the local judge of the General Sessions Court for the purpose of searching for these articles supposedly missing from Fort Campbell.

During the course of the search pursuant to this search warrant the officers found the four heaters belonging to Mr. Peacher in the home of the plaintiff in error.

At the time the officers arrived with this search warrant neither the plaintiff in error nor his wife was at home—the children were the only ones there. After they had waited a short while the plaintiff in error's wife came and the warrant was read to her. After this was

done the authorities of Fort Campbell brought the plaintiff in error to the house where the warrant was again read to him.

The State in its proof showed the above mentioned facts and introduced as a witness one Sergeant Cowan of Fort Campbell C.I.D. who stated that when he talked to the plaintiff in error after this search the plaintiff in error admitted to him (tr. p. 55) that he entered the house of Mr. Peacher (of course he did not mention the man's name but he identified the place where he did enter the house which under the proof is that of Mr. Peacher) and there stole the four heaters for which he was indicted herein.

Plaintiff in error took the witness stand on his behalf and denied the theft and stated that these heaters if they were there, and he did not know they were there, were left there by one Pettus who at that time was serving a term in the penitentiary for other thefts in and around Clarksville. The plaintiff in error likewise denied that he had told Sergeant Cowan that he had stolen these things. Upon repeated cross examination on the question he finally said that he probably did tell him that he stole the heaters but he did not know why because it was not so.

In rebuttal the State brought Pettus from the penitentiary and used him as a rebuttal witness and he denied emphatically that he had committed the burglary or stolen these heaters and left them at the plaintiff in error's home.

There are two assignments of error, one to the effect that the trial court erred in allowing the State to introduce evidence obtained as a result of the search because

these heaters were not set forth in the search warrant as the property to be searched for. The second assignment of error is addressed to the fact that the trial court should have dismissed this case because Gerchman was denied a speedy trial.

As to the first assignment of error we think that it must be overruled because the record shows by the testimony of the officers that when they entered this home of the plaintiff in error on a proper search warrant that in going through the house to make the search for the things mentioned in the warrant they saw these heaters and immediately concluded that they were possibly the heaters that had been stolen some days before from the Peacher home. A deputy sheriff who had made an investigation of the breaking and entering and theft of the Peacher home had informed these officers who were making this search of this theft and what had been missing from the Peacher home. From this investigation these officers when they saw these heaters in this house from what had been told them naturally assumed that they were the heaters which had formerly been stolen in this other place. Upon investigation this was confirmed by Peacher who properly identified them by serial number, etc. Another very pertinent reason why this is not error is the fact of the testimony of Sergeant Cowan who details an oral confession of the plaintiff in error of the theft of the things that he was here indicted for. Then, too, when the plaintiff in error took the witness stand and first denied having made this confession and then said maybe he did and said he probably did and did not know why he did, all of these matters including the oral confession were factual situations from which the jury could fairly conclude that this crime had been committed. From this

evidence the jury clearly could conclude beyond a reasonable doubt that the plaintiff in error was guilty of this crime.

■ The very able argument was made at the Bar and was made in the brief that in a search warrant for specific articles that this, unless the things found are contraband or something of that kind, the getting of other evidence by reason of a lawful search warrant about another crime, should be excluded. We think unquestionably that this argument would have been good if the search warrant was used more or less as a pretense to find something else. When it is within the knowledge of the officers making the search for specific things that other things have likewise been stolen and they in the course of their legitimate search see and run into these other things clearly then it does not constitute an unreasonable search for the officers to report on the things found. Such a report would be reasonable.

"Whether or not a search is reasonable is a judicial question. There is no formula for the determination of the reasonableness of a search and seizure, but each case is to be decided on its own facts and circumstances." 47 Am. Jur., Page 533, Sec. 52.

It was held by the Supreme Court of the United States in *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, that property seized under a valid search warrant may be used in the prosecution of a suspected person for a crime other than that which may have been described in the affidavit for the warrant as having been committed by him. In *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, it was held among other things that if the entry on the premises is authorized and

the search which follows is valid, there is nothing in the Fourth Amendment to the Federal Constitution which inhibits the seizure by law enforcement agents of government property the possession of which is a crime, even though the officers were not aware that such property is on the premises when the search is initiated.

We cite these two holdings merely as an illustration of what the courts have held that might be done under a valid search. Under our constitutional inhibition against an unreasonable search (Article 1, Section 7, Constitution of the State of Tennessee) a search and the finding of property as is detailed by the proof herein is clearly not unreasonable. Frankly if officers with a search of this kind, and knowing of other things having been stolen from another place, find those and made no report thereof the officers would be subject to very great criticism and they would not be doing their duty if they did not make a proper report of this finding. The finding of these articles and the introduction thereof in evidence is thus certainly not erroneous.

The second assignment is to the fact that the man did not have a speedy trial. We, after reading this record, are convinced that there is no error herein. The plaintiff in error had a number of indictments against him in this Court for various and sundry thefts or burglaries. He had been tried on some two or three of these different indictments and at the time this case was tried he was then serving time on a previous conviction in the State Penitentiary. This trial herein was had approximately a year after the crime was discovered. In the colloquy between the trial judge and the District Attorney and counsel for the plaintiff in error herein it was the position of the trial judge and the District Attorney

that one of these cases against the plaintiff in error had been tried at each term. Counsel for the plaintiff in error did not think this had been done but the court concluded that it had. It stated too in this banter back and forth that there were some 200 other cases on the docket and that in the year's time there had been no particular delay but that each docket had been full and they had tried to take these things up as fast as the court could.

■■ Our constitutional inhibition against a delay in trial, Article 1, Section 9, Constitution of the State of Tennessee is not violated under the facts of the instant case. One of the leading authorities in the United States on the question of a speedy trial is our case of *Arrowsmith v. State,* 131 Tenn. 480, 175 S.W. 545, L.R.A.1915E, 363. The reasons for a speedy trial and when the Constitution will be violated by not giving a speedy trial are fully and ably set forth in this case. Even when one is in prison he is entitled to the protection of this provision of the Constitution, that is, to a speedy trial, but under the circumstances of that kind, that is, when the man is in prison, a trial might be longer delayed than when the man is held in jail an unreasonable length of time to await trial because an acquittal in the case where the question is raised would not necessarily terminate the imprisonment when the man is in the penitentiary. In 14 Am.Jur., under Criminal Law, page 859, section 135, are a number of instances of what amounts to compliance with this constitutional provision for a speedy trial. Among other things there said are:

"A speedy trial is one conducted according to fixed rules, regulations, and proceedings of law, free from vexatious, capricious, and oppressive delays. * * *

The law does not exact impossibilities, or extraordinary efforts, diligence, or exertion from the courts, or the representatives of the state; nor does it contemplate that the right of speedy trial which is guaranteed to the prisoner shall operate to deprive the state of a reasonable opportunity of fairly prosecuting criminals.''

We have concluded under the facts herein that there has been no violation of this man's rights. After carefully reading the record and briefs and listening to arguments, investigating authorities cited, and making some independent investigation we are satisfied that this man had a fair trial and is guilty of the crime for which he is charged. Thus it is that the judgment below must be affirmed.

Counsel for the plaintiff in error were appointed by the court to defend this man. They have done an excellent job, both in his defense in the trial court and their appearance and arguments and briefs in this Court. This is another illustration of what members of the Bar do for the public without compensation and do it in an able, serious and energetic manner. We of the Court again express our thanks for this able presentation on behalf of this indigent prisoner.