STATE OF NORTH CAROLINA v. CECIL HOLLARS.

(Filed 15 December, 1965.)

1. **Criminal Law § 26—**

    Plea of former jeopardy is not apposite upon a retrial obtained by defendant pursuant to G.S. 15-217.

2. **Constitutional Law § 30—**

    The fundamental law secures to every defendant the right to a speedy trial.

3. **Same—**

    The constitutional right to a speedy trial extends to convicts and prisoners.

4. **Same—**

    Neither the constitution nor the statutes attempts to fix the exact time in which a trial must be had in order to comply with the constitutional requirement of a "speedy" trial, and in the practical application of this relative term four factors are to be considered: the length of the delay, the reason for the delay, prejudice to defendant, and waiver by defendant, the burden being upon defendant to show that the delay was due to the neglect or wilfulness of the State.

5. **Same— Record held not to support conclusion that defendant was denied constitutional right to speedy trial.**

    Some two years elapsed between the vacation of defendant's sentence pursuant to G.S. 15-217 and the retrial. The record disclosed that during this period defendant had counsel for all but a very short time, that de-

fendant had access to the courts both through his counsel and *in propria persona*, that he was tried at the next term after he moved for trial, that during this period he was serving a series of sentences for other offenses except for less than a month prior to the retrial, and that presiding judges at two of the intervening terms were connected with the original trial, that the docket was congested, that it was desirable to try defendant's case with a companion case, and that at least one continuance was at the request of defendant. There was no showing of prejudice to defendant from the delay. *Held:* The record supports the court's ruling that defendant's right to a speedy trial has not been transgressed.

**6. Criminal Law § 173—**

Once a trial has been declared a nullity in a post-conviction proceeding, defendant may not be allowed to withdraw his petition and reinstate the vacated sentence.

APPEAL by defendant from *Bone, E.J.,* July Special Criminal Session 1965 of NASH.

Defendant was retried upon two bills of indictment charging escape (Case No. 8976) and armed robbery (Case No. 8977) after previous convictions upon the same bills of indictment were set aside in proceedings under G.S. 15-217 *et seq.* The two cases were consolidated for trial. Defendant was again found guilty as charged in both indictments. In Case No. 8976, he was sentenced to two years in the State Prison; in Case No. 8977, to not less than five nor more than seven years. From these judgments, he appeals.

In brief summary, the State's evidence at the retrial tends to show: On March 8, 1960, defendant, Rufus Gainey, and Fred Bowman were among a group of nine convicted felons and "a water boy" from the Nash County Prison Camp who were working "under the gun" on Highway #301 near Battleboro. During the lunch period, pursuant to plan, defendant, Fred Bowman, and Rufus Gainey disarmed the two guards. Taking their pistol and rifle, they locked them and three other prisoners in the cage of the prison truck and drove away with all the prisoners except one "gunman" and the water boy who were left at the scene. Rufus Gainey drove the truck; defendant and two others got in the back, where the guards ordinarily sat. Defendant forced one of the guards to give him his cap and topcoat. After driving some distance, between Nashville and Wilson, the prisoners spotted a Buick automobile in the yard of F. L. Hines, an elderly colored man, who came up as Gainey drove into the yard. The prisoners dismounted; defendant took the pistol from Bowman and shot it into the ground at Hines' feet. Gravel flew up, cutting Hines' face and head. Defendant demanded that Hines give him his car keys. While Hines was "trying to get his mind together," someone said, "Old man, it's your

keys or your life. It don't make any difference." Hines gave the keys to defendant, who then attempted to tie him to a chair. When Hines' wife told defendant that they had no telephone, someone called, "Let's go, Cecil." He went outside and drove the Buick away. After some persuasion, and against the advice of his wife, who told him, "Just don't turn out no more of them things here," Hines released the two guards and the three prisoners who had been left behind locked in the cage.

Defendant's evidence tends to show that before the truck stopped in Hines' yard, defendant "hit the ground" and ran back down the shoulder of the highway, and that he did not leave the Hines yard in the Buick. Defendant did not testify. His witness, Rufus Gainey, said: "I am not testifying that he (defendant) was not there. I testified that I seen him leave there running. Now, if he come back I don't know. He was not in the car when I drove it out of this colored man's yard."

Defendant's criminal record since 1957 is pertinent to this appeal. It follows chronologically:

(1) At the September 1957 Term of Watauga, in Case No. 173, defendant entered a plea of *nolo contendere* to a charge of breaking and entering and larceny. He received a sentence of 2-4 years in the State's Prison. At the same time he received concurrent sentences totaling 6 months in two misdemeanor cases (driving drunk and worthless check).

(2) In September 1958, in the Recorder's Court of Alexander County, Case No. 3788, defendant was convicted upon a charge of destroying State property. His sentence was six months to begin at the expiration of the sentence in Case No. 173.

(3) On December 12, 1959, defendant escaped from the custody of the Prison Department and was recaptured the same day. At the October 1960 Term of Nash, in Case No. 8902, he was convicted of this escape and received a sentence of two years to begin at the expiration of Case No. 3788.

On March 8, 1960, defendant again escaped. He was recaptured August 1, 1960, in the State of Florida. For this escape, a felony, he was indicted at the November 1960 Term of Nash in Case No. 8976. At the same term he was also indicted for armed robbery, an offense allegedly committed in that county on March 8, 1960, in furtherance of the escape. These two cases (Nos. 8976 and 8977) were consolidated for trial. The jury returned a verdict of guilty as charged in each case. (These are the two cases involved in this appeal.)

(4) In Case No. 8976, defendant's sentence was two years, to begin at the expiration of the sentence in Case No. 8902.

(5)   In Case No. 8977, his sentence was 5-10 years, to begin at the expiration of the sentence in Case No. 8976.

(6)   At the December 1960 Term of Johnston, in Case No. 9795, defendant, represented by counsel, was tried and convicted of armed robbery, for which he was sentenced to not less than 20 nor more than 30 years in the State Prison, this sentence to begin at the expiration of the sentences imposed in Nash County in Cases Nos. 8976 and 8977. Because of the escapes in Cases Nos. 8902 and 8976, defendant did not complete his sentence in Case No. 173 until December 14, 1960. (As a result of an error in prison book-keeping he was credited with having served the six-month sentence in Case No. 3788 concurrently with No. 173.) On December 14, 1960, he began serving the two-year sentence for escape in Case No. 8902. This sentence was completed on July 1, 1962. He then began serving the two-year escape sentence in Case No. 8976. Under ordinary circumstances he would have completed this sentence on November 19, 1963. However, on April 8, 1963, in post-conviction proceedings under G.S. 15-217 *et seq.*, the two Nash County sentences (Nos. 8976 and 8977) were vacated by Honorable Albert W. Cowper, judge presiding, and new trials ordered upon the original bills of indictment. The State's petition for *certiorari* to review Judge Cowper's order was denied by this Court July 20, 1963. On July 26, 1963, the attorney who represented defendant in the post-conviction proceedings was permitted to withdraw. On August 19, 1963, his present counsel, Don Evans, Esquire, was appointed.

On August 31, 1963, defendant's counsel, pursuant to his request, petitioned the court to transfer him from the Nash County jail to Central Prison until the next Criminal Term of Nash. On the same day, Judge Fountain, the resident judge, entered the requested order.

On September 18, 1963, as the result of a petition directed to this Court by defendant *in propria persona,* we directed the Superior Court of Johnston County to vacate the sentence in Case No. 9795, which was to begin at the expiration of the Nash County sentences, and to enter a proper sentence in view of the vacation of the sentences in Cases Nos. 8976 and 8977. *State v. Hollars,* 260 N.C. 195, 132 S.E. 2d 325. At the October 1963 Term, upon defendant's request, resentencing was delayed until the December 1963 Term, at which time the sentence pronounced was imprisonment for not less than 20 nor more than 30 years. In accordance with the opinion of this Court, however, it was ordered that this sentence be deemed to have begun at the expiration of the sentence in Case No. 8902. This sentence thus began July 1, 1962, and all

credit for the Nash County sentences (Nos. 8976 and 8977) was transferred to the Johnston County sentence.

(7)   At this same December 1963 Term, in Case No. 1094, defendant pled guilty to an attempted escape. His sentence was two years to run concurrently with that in Case No. 9795. Commitment on this sentence issued December 2, 1963.

On April 16, 1964, upon defendant's petition, under G.S. 15-217 *et seq.*, the Johnston County sentence in Case No. 9795 was vacated and a new trial ordered. Defendant was returned to Central Prison to complete his sentence in Case No. 1094. Case No. 9795 is still pending on the docket in Johnston County awaiting trial. Defendant finished serving the sentence in Case No. 1094 on May 17, 1965.

When these two cases, Nos. 8976 and 8977, were called for retrial at the July 1965 Special Criminal Session of Nash, defendant (1) entered a plea of former jeopardy; (2) moved for his discharge on the ground that he had been denied a speedy trial; and, when these motions were overruled, (3) moved that he be allowed to withdraw his 1963 petition for a new trial and that the order of Cowper, J., ordering his retrial, be struck, and that the previous judgment entered against him in November 1960 in these two cases be reinstated. This motion was likewise denied. To each of these rulings defendant excepted.

*Attorney General T. W. Bruton, and Theodore C. Brown, Jr., Staff Attorney for the State.*
*Don Evans for defendant appellant.*

SHARP, J.   Defendant's first assignment of error is to the failure of the court to sustain his plea of former jeopardy. He argues that, since the State failed to protect his constitutional rights in the first trial of these two cases, the court could not again try him for the same offense. The judge correctly denied this plea; this contention has heretofore been decided against defendant. *State v. Gainey,* 265 N.C. 437, 144 S.E. 2d 249; *State v. Anderson,* 262 N.C. 491, 137 S.E. 2d 823; *State v. White,* 262 N.C. 52, 136 S.E. 2d 205.

Defendant next assigns as error the court's denial of his motion that he be discharged because he had not been given a speedy trial. In support of this motion, defendant's counsel made a statement to the court. The solicitor for the State then made a statement. It was upon these statements, which contained no material conflict, that the court made its ruling. They are summarized as follows: Defendant was not tried immediately after his sentence was va-

cated because the solicitor petitioned the Supreme Court for a writ of *certiorari* to review the order of Cowper, J. He was not tried at the August 1963 Term because the presiding judge, Honorable George Fountain, felt that the Nash County cases should await the retrial of the Johnston County Case (No. 9795). According to defendant's counsel, the allegation is that "after this particular armed robbery, (defendant) went to Johnston County and participated in another armed robbery there." (As previously noted, the Johnston County case has not yet been retried.) From time to time, defendant wrote his counsel inquiring why his case was not tried, but counsel did not move the court that he be brought to trial. In February 1964, he wrote defendant that his case would be tried in March; but, at the March Term, for personal reasons, defendant's attorney requested and was granted a continuance. In August, at defendant's instance, counsel requested the solicitor to calendar the case, and the solicitor agreed to try the case at the August Term. The case was not tried, however; nor was it called to the court's attention. At the October Term, the presiding judge was the Honorable Rudolph Mintz, who had presided at defendant's first trial in November 1960. He was also the presiding judge at one other term. He preferred not to retry defendant and counsel did not insist. At another term Honorable Hubert E. May, the presiding judge, had, as solicitor, prosecuted defendant in November 1960. He disqualified himself. The case was calendered for trial at the May 1965 Session. At that time, the post-conviction petition of Rufus Gainey, filed under G.S. 15-217, was pending. He had also been convicted in November 1960, of the escape and armed robbery in which defendant was alleged to have participated, and it was the solicitor's desire to retry defendant and Gainey at the same time if Gainey were awarded a new trial. See *State v. Gainey, supra.* The order awarding Gainey a new trial was entered Thursday afternoon. At noon on Friday, the following day, counsel for defendant, for the first time, made a motion that he be granted a speedy trial. It was then too late to try defendant at that term, but the court set the case for trial at the next term, at which time it was tried.

The fundamental law of this State secures to every defendant the right to a speedy trial. *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870; *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891; *State v. Webb,* 155 N.C. 426, 70 S.E. 1064.

"The right to a speedy trial is intended to avoid oppression and prevent delay by imposing on the courts and on the prosecution an obligation to proceed with reasonable dispatch. It has been said that the basic policy underlying the constitu-

tional guaranty and the statutes enacted to implement it is to protect the accused from having criminal charges pending against him an undue length of time. However, the guaranty has been held to serve a threefold purpose: it protects the accused, if held in jail to await trial, against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and, like statutes of limitation, it prevents him from being exposed to the hazard of a trial after the lapse of so great a time that the means of proving his innocence may have been lost." 21 Am. Jur. 2d, Criminal Law § 242, (1965).

The law grants the right of a speedy trial to every accused. A convict in the penitentiary is not excepted; he too is entitled to a speedy trial of the charges of other crimes pending against him in the same jurisdiction. 22A C.J.S., Criminal Law § 467(3) (1961); 21 Am. Jur. 2d, *supra* § 249; Annot., Constitutional or statutory right of accused to speedy trial as affected by his incarceration for another offense, 118 A.L.R. 1037 (1939). However, "when the man is in prison, a trial might be longer delayed than when the man is held in jail an unreasonable length of time to await trial because an acquittal in the case where the question is raised would not necessarily terminate the imprisonment when the man is in the penitentiary." *Gerchman v. State,* 206 Tenn. 109, 116, 332 S.W. 2d 182, 185. Nevertheless, release from imprisonment is only one of the purposes of a speedy trial, and the danger that long delay may result in impaired memories and the loss of witnesses is as real to a convict as to any other person charged with crime. Presumably, his anxiety with reference to the pending trial is as great as, if not greater than, that of one who has been admitted to bail.

*Speedy* is a word of indefinite meaning, *State v. Webb, supra* at 429. Neither the constitution nor the legislature has attempted to fix the exact time within which a trial must be had. "Whether a speedy trial is afforded must be determined in the light of the circumstances of each particular case. In the absence of a statutory standard, what is a fair and reasonable time is within the discretion of the court. 22A C.J.S., Criminal Law § 467(4), pp. 24, 25, 30. 'Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the length of the delay, the reason for the delay, the prejudice to defendant, and waiver by defendant. See Note, 57 Colum. L. Rev., 846, 861-63 (1957). These factors are to be considered together because they are interrelated. For example, even a short delay might constitute a violation of defendant's constitutional right where defendant is

held without bail, and there is no reason for the delay.' *United States v. Fay,* 113 F. 2d 620 (C.C.A. 2C 1963)." *State v. Lowry, supra* at 542, 139 S.E. 2d at 875.

The burden is on the accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or wilfulness of the State's prosecution. The right to a speedy trial is not violated by unavoidable delays nor by delays caused or requested by defendants. 21 Am. Jur. 2d, *supra* §§ 251, 252, 253 (1965) ; See Note, 57 Colum. L. Rev. 846, 855, 859 (1957).

In the majority of jurisdictions a defendant waives his right to a speedy trial unless he demands it.

> "It has been held generally that an accused is not entitled to a discharge for delay in bringing him to trial unless it appears that he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him. Accordingly, it is ordinarily deemed that a defendant, in the absence of such effort, has waived his right to a speedy trial under the Constitution and the statutes in aid thereof." Annot., Speedy Trial — Waiver or Loss of Right, 129 A.L.R. 572, 587 (1940) ; Supp. Annot., 57 A.L.R. 2d 302, 326 (1958).

As pointed out in the Columbia Law Review note, *supra* at 853, this judicially created rule requires a defendant to demand trial or resist postponement since the right to a speedy trial "is not designed as a sword for defendant's escape but rather as a shield for his protection." The courts reason that requiring demand for trial on the merits will prevent a technical evasion of the charge. A strong minority, however, rejects the "demand doctrine" and requires only a motion to dismiss filed before trial. See 21 Am. Jur. 2d, *supra* § 254. Some courts also relieve a prisoner serving another sentence from making such a demand. See Annot., 118 A.L.R. 1037, 1043 (1939).

In *O'Brien v. United States,* 25 F. 2d 90 (7th Cir.), defendant, in default of bail, was confined in jail for 13 months awaiting trial. During the interim he made no demand for a speedy trial, but when his case was called, he moved for his discharge on the ground that his constitutional right to a speedy trial had been transgressed. In affirming the District Court's denial of defendant's motion, Alschuler, Circuit Judge, said: "This defendant does not appear to have been unduly restricted in his access to the court, personally or by counsel. Without determining whether delay alone, or what delay, in bringing to trial would entitle to discharge, we may say

delay unobjected to, without effort to secure earlier trial, does not alone indicate transgression of right to speedy trial." *Id.* at 92.

When defendant's counsel, on the afternoon of the last day of the May 1965 Session, first moved the court that defendant be given a speedy trial, the case was set for trial — *and tried* — at the next term. From the time Judge Cowper vacated the original sentences in these cases on April 8, 1963, until his trial in July 1965, defendant was without counsel only for the period between July 26, 1963, and August 19, 1963 — 24 days. During 1963, defendant himself wrote many letters to the Clerk of this Court with reference to his various sentences. On May 31, 1963, he filed, *in propria persona*, a petition in this Court with the result that we ordered credited on his Johnston County sentence (Case No. 9795) all the time he had served on the Nash County sentence (No. 8976) since the expiration of his sentence in Case No. 8902. It was thereafter that the Johnston County sentence was vacated upon his petition in post-conviction proceedings. If defendant wrote any letters to the judge presiding in Nash County demanding a speedy trial in these two cases, the record before us does not disclose it. It is quite clear that his imprisonment has not restricted this defendant's access to the court, and that it did not prevent him from demanding, *in propria persona*, or through counsel, a speedy trial.

In support of his motion for a discharge from these indictments defendant offered no evidence — indeed, he makes no contention — that he has been prejudiced by the delay in his retrial. Nothing in the record suggests that his ability to present his defense was in any way impaired by the delay. Indeed, the State, in view of the age of two of its witnesses, risked more by the delay than did defendant. See *State v. Patton, supra,* at 365, 366. Defendant's motion for his discharge is purely technical, based upon the lapse of time between July 20, 1963, the date this Court denied *certiorari* to review the August 4, 1963 judgment of Cowper, J., and July 15, 1965, the Special Criminal Session at which these cases were tried. From May 17, 1965, to July 15, 1965, defendant was in jail awaiting trial of these two cases; at all other times he was a prisoner serving a series of sentences.

We do not approve a delay of two years in trying any defendant's case. We must note, however, that the ever-increasing number of criminal cases is putting a heavy strain upon speedy trial. The flood of post-conviction petitions engendered by *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733, and the retrials which some of the petitions — as here — have necessitated, have further burdened courts which were even then

struggling to keep abreast of congested dockets. The combination of circumstances here — the previous connection of two of the presiding judges with defendant's former trial, the desirability of trying defendant's case with the companion case of Rufus Gainey, at least one request by defendant's counsel for a continuance, the congested condition of the docket, plus the fact that a retrial could not have resulted in defendant's immediate release from prison — negate any wilful failure on the part of court officials to give defendant a speedy trial. Considering the reasons for the delay, the lack of prejudice to defendant from it, and his failure to demand a trial earlier, his Honor's ruling that defendant's right to a speedy trial had not been transgressed will not be disturbed.

Defendant's third assignment of error is to the refusal of the court to permit him to withdraw his petition to review the legality of the original trial of these cases and to set aside the judgment in which Judge Cowper vacated the original sentences. Once a trial has been declared a nullity in a post-conviction proceeding, "this nullity cannot be resuscitated and made to serve as the basis for a sentence." *Ruckle v. Warden, Maryland Penitentiary*, 335 F. 2d 336, 338 (4th Cir.). The rationale is that no one may be sentenced without a valid conviction. When a trial is annulled, so is the sentence, and it cannot be reimposed without a new trial. The Post-Conviction Hearing Act was rewritten by N. C. Sess. Laws 1965, ch. 352. Since July 1, 1965, G.S. 15-220 has provided that "the court may, in its discretion, grant leave at any stage of the proceeding *prior to the entry of judgment* to withdraw the petition." (Emphasis added.) After the sentences imposed at the March 8, 1960 Term of Nash were vacated upon defendant's petition in the post-conviction proceedings, Judge Bone was without authority to reinstate the vacated sentences by vacating Judge Cowper's order.

Defendant's other assignments of error challenge the merits of the retrial itself. They relate to the admission of evidence and the charge. We have carefully examined each and find no merit therein. The transcript reveals that defendant has had a fair trial by an able and a conscientious judge, who was careful to preserve all defendant's rights.

In the trial below we find

No error.