STATE v. HAROLD SMITH.

(Filed 3 May, 1967.)

1. Assault and Battery § 14—

Testimony of one witness to the effect that he saw defendant and his victim fighting, of another that he saw defendant chasing his victim with a knife, of a third that after defendant was subdued the victim was bleeding profusely, with medical testimony that the wounds were extensive and would have caused death but for prompt medical treatment, *held* sufficient to be submitted to the jury, notwithstanding testimony of the victim tending to exculpate defendant.

2. Constitutional Law § 30— Record held not to disclose violation of defendant's constitutional right to speedy trial.

Defendant contended that the prosecution against him should be dismissed because of the elapse of some thirty months from the time of the offense to the time of trial. The record disclosed that on two occasions when defendant was called for trial, mistrials were ordered on his motion because of unfavorable publicity, that after the second trial defendant requested that he be tried within 90 days, but that it was impossible to do so because of congestion of the docket and the necessity of giving

priority to prisoners in jail on default of bond, and that defendant was serving a life sentence and a concurrent 36 year Federal sentence at the time of the offense charged and was getting credit upon the service of these sentences during the delay. *Held:* The record discloses that defendant was tried as soon as practical after delays granted on his own motion, and that defendant was not prejudiced by the delay.

APPEAL by defendant from *Braswell, J.*, at the January, Regular Criminal Session, 1967, of WAKE County Superior Court.

On 26 August 1964 the defendant Harold Smith was serving a life sentence in the State Prison of North Carolina, and he was also serving a federal sentence of 36 years. On that date he was charged with committing an assault with a deadly weapon with the intent to kill Jessie Perry, who was also serving a life sentence.

The defendant was placed on trial on the felonious assault charge at the December Term 1964 of Wake County Superior Court. During the trial, and upon motion of his counsel, because of unfavorable newspaper articles, a mistrial was ordered.

He was again placed on trial for this offense at the July 1965 Term, and because of a repetition of the unfavorable publicity during the trial, the motion by his counsel for a mistrial was again granted.

The defendant was placed on trial for the third time at the January Term 1967. The State offered the evidence of L. V. Stephenson, a prison employee, that he saw the defendant and Jessie Perry fighting, that Stephenson attempted to separate them and Perry ran down the hall, that Smith ran after him, having a knife in his hand, and that during the fight Smith was swinging both his hands at Perry. Sgt. Rice testified that he saw Smith chasing Perry with a knife. Captain Garrison testified that he also saw Smith chasing Perry with a dagger and that after Smith had been subdued that Perry was bleeding extremely, that he had a cut on his forehead and left forearm. Doctor Charles Phillips attended Perry and testified that he was "bleeding profusely from four wounds — one on the left wrist, one on left forehead, left palm and left chest," and that in his opinion Perry would have died had he not received prompt treatment.

The defendant did not testify but called his alleged victim, Perry, as a witness. He said that "another guy," whom he had never seen before and whose name he did not know, started cutting him, that Smith came up and "grabbed at this guy and when he did, I ran into the back hall . . . If Smith had a knife, I did not see it . . . (he) did not cut me. . . ."

Upon a verdict of guilty of an assault with a deadly weapon, the

Court imposed an additional two-year prison sentence, and the defendant appealed.

*George M. Anderson and E. Ray Briggs, attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, and George A. Goodwyn, Assistant Attorney General, for the State.*

PER CURIAM. The defendant excepts to the refusal of the court to allow his motion for nonsuit at the close of the State's evidence and at the close of all the evidence. However, from a consideration of the evidence related in the statement of facts, we hold that it was sufficient to support the verdict and repel the motions for nonsuit.

The defendant strenuously argues that the cause against him should have been dismissed for failure to grant a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. He offered evidence that between the date of the alleged offense and his last trial that a period of some thirty months had elapsed, during which time he was confined to a small cell on death row at the State's Prison. He testified that when the second mistrial occurred in July 1965 that he requested that he be tried again within ninety days, and that he wrote the solicitor, the judge, the Attorney General, and others, on numerous occasions, requesting a speedy trial, but sustained a burdensome delay.

The State in reply called attention to the fact that the defendant was tried promptly the first time, and that a mistrial resulted upon the defendant's motion; that he was tried again within a few months, and the second mistrial became necessary and was granted upon the defendant's motion.

In response to the defendant's motion to dismiss, the solicitor asserted that he had a limited number of terms of court during the period in question, that there were always many prisoners in jail because of their inability to give bond, that there were some 300 cases on the docket, that it was not practical to dispose of the case earlier, and that defendant has suffered no deprivation, since he was serving and getting credit upon his sentence while awaiting trial.

In the recent case of *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309, Justice Sharp discussed the subject of speedy trials in connection with the Sixth Amendment. She quoted from 22A C.J.S., Criminal Law, § 467(4) as follows:

> "Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the

length of the delay, the reason for the delay, the prejudice to defendant, and waiver by defendant."

She further stated, "the right to a speedy trial is not violated by unavoidable delays nor by delays caused or requested by defendants."

While it is true that it was some thirty months from the time of the event until a jury trial was completed, it must be remembered that two other trials had been held earlier and that due to no fault on the part of the State, but in the interest of the defendant's welfare, mistrials were ordered. Had the defendant been held in jail as a prisoner because of his inability to make bond, we are quite sure that he would have received an earlier trial, since the solicitors generally attempt to try jail cases before getting to those where the defendants are at liberty on bond. In this case the defendant has suffered no prejudice by the delay. Having a life sentence imposed in 1961 to serve and a 36-year federal sentence, running concurrently with it, the defendant could have had no practical or substantial hope of pardon or parole prior to the time of his 1967 trial. Meanwhile, he was getting credit upon the service of these sentences so that we cannot find that he suffered any disadvantage by the delay.

In *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891, the following language was used:

"The Court said in *Beavers v. Haubert,* 198 U.S. 77, 49 L. ed. 950, 954: 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'

"The constitutional right to a speedy trial is designed to prohibit arbitrary and oppressive delays which might be caused by the fault of the prosecution. *Pollard v. United States,* 352 U.S. 354, 1 L. ed. 2d 393; *State v. Hadley, Mo.,* 249 S.W. 2d 857. The right to a speedy trial on the merits is not designed as a sword for defendant's escape, but as a shield for his protection."

In view of the above succinct statements of the purpose of the constitutional safeguard and the exhaustive and thorough opinion of Justice Sharp in the *Hollars* case, we find it unnecessary to discuss the question further.

No error.