Robert James PITTS, Petitioner,

v.

**STATE OF NORTH CAROLINA,**
Respondent.

No. C–216–G–66.

United States District Court
M. D. North Carolina,
Greensboro Division.

May 11, 1967.

Thomas K. Spence, Concord, N. C. (appointed), for petitioner.

Theodore C. Brown, Jr., Staff Atty., N. C. Dept. of Justice, Raleigh, N. C., for State of North Carolina.

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

The petitioner, Robert James Pitts, a prisoner of the State of North Carolina, has filed with this Court a petition for a writ of habeas corpus pursuant to the provisions of Title 28, U.S.C. § 2254, and accompanied the petition with an affidavit of poverty. The petition was filed *pro se,* and an order has been entered permitting the petition to be filed without prepayment of fees or costs, or security therefor.

The petitioner asserts that he has been deprived of the following rights guaranteed him by the United States Constitution:

1. The Sixth Amendment right to a speedy trial as made applicable in state court by the Fourteenth Amendment.

2. The Sixth Amendment right to the assistance of counsel for his defense as made applicable in state court by the Fourteenth Amendment.

3. The right to an appeal from his conviction as a part of his Fifth Amend-

ment right not to be deprived of his liberty without due process of law as made applicable to state courts by the Fourteenth Amendment.

More specifically, petitioner contends that these rights were violated in the following manner:

1. Petitioner was brought to trial nearly sixteen years after the robbery occurred. The warrant was issued for his arrest in October, 1949, approximately two months after the robbery, at which time he was in custody in South Carolina. He began serving a sentence for armed robbery in South Carolina a few months later, and continued in prison there until December, 1964. He claims that he did not know a detainer was placed against him in South Carolina by the North Carolina authorities until he inquired about his eligibility for parole in 1956. After his release in December, 1964, he was taken to Cabarrus County, North Carolina, and indicted on January 4, 1965. He was tried on May 24, 1965—fifteen years and nine months after the robbery, and fifteen years and seven months after the warrant was issued.

2. Petitioner contends that his trial counsel was ineffective to a degree amounting to a constitutional infirmity as revealed by the following: the attorney did not move to quash the indictment or in arrest of judgment at the trial on the ground of lack of a speedy trial knowing that almost sixteen years had elapsed; the attorney did not make it plain to the jury that alleged perjury had been committed by the prosecuting witness; and finally, that the attorney did not perfect the appeal to the State Supreme Court although, the petitioner asserts, the attorney had promised and been paid to do so. The petitioner asserts that all these things taken together reveal that counsel was ineffective.

3. Petitioner's third ground for relief is that he was denied his right to appeal by his attorney's neglect to perfect his appeal to the State Supreme Court.

Petitioner gave notice of appeal in open court, and presents evidence that he was promised by his attorney that the appeal would be perfected. The record shows that the appeal was not perfected by early October, 1965, and that the Judge Presiding had petitioner committed to prison since he had not perfected his appeal.

Petitioner received a post-conviction hearing in the state court on May 27, 1966, at which he raised the questions of denial of speedy trial and denial of his right to appeal, among other questions not relevant here. The presiding judge found that the matters raised were either ones that should have been brought up at the trial or on appeal, and thus that "this court has no jurisdiction to entertain the matters presented at this hearing." Although a factual hearing was held at which some evidence was presented by petitioner on the denial of his right to appeal, this Court ordered a further hearing to receive the entire evidence including that of the attorney as to his actions at the trial and on appeal, and evidence on the question of the denial of a speedy trial.[1] A hearing was held on March 3, 1967. Petitioner was ably represented by Thomas K. Spence, an attorney from Concord, North Carolina, appointed by this Court to whom this Court expresses its appreciation.

## DISCUSSION

### 1. *Speedy Trial*

The petitioner first contends that he was denied one of the rights guaranteed him by the Sixth Amendment to the United States Constitution: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." Recently, the Supreme Court said that this guarantee " * * * is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to de-

1. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

fend himself." [2] The Supreme Court has also said the following on the subject:

"The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon the circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.[3] * * * The delay must not be purposeful or oppressive.[4] * * * The essential ingredient is orderly expedition and not mere speed." [5]

▇ The recent case of Klopfer v. State of North Carolina makes it abundantly clear that the Sixth Amendment right to a speedy trial is applicable in state courts as well as federal courts through the Fourteenth Amendment.[6] North Carolina had recognized the right in principle long before the Klopfer case.[7] The following language from North Carolina Supreme Court cases reveals this clearly:

"The constitutional right to a speedy trial is designed to prohibit arbitrary and oppressive delays which might be caused by the fault of the prosecution. * * * The right to a speedy trial on the merits is not designed as a sword for defendant's escape, but as a shield for his protection." [8]

"No general principle fixes the exact time within which a trial must be had. Whether a speedy trial is afforded must be determined in the light of the circumstances of each particular case. In the absence of a statutory standard, what is a fair and reasonable time is within the discretion of the court. * * * Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant. * * * These factors are to be considered together because they are interrelated." [9]

"The law grants the right of a speedy trial to every accused. A convict in the penitentiary is not excepted; he too is entitled to a speedy trial of the charges of other crimes pending against him in the same jurisdiction. * * * However, when the man is in prison, a trial might be longer delayed than when the man is held in jail an unreasonable length of time to await trial because an acquittal in the case where the question is raised would not necessarily terminate the imprisonment when the man is in the penitentiary. * * * Nevertheless, release from imprisonment is only one of the purposes of a speedy trial, and the danger that long delay may result in impaired memories and the loss of witnesses is as real to a convict as to any other person charged with crime." [10]

▇ Taking the first of the four factors mentioned in State v. Lowry, supra,

---

2. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966).

3. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950, 954 (1904).

4. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393, 399 (1957).

5. Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041, 1048 (1958).

6. Decided March 13, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

7. State v. Webb, 155 N.C. 426, 70 S.E. 1064 (1911). See also North Carolina General Statutes § 15–10 et seq.

8. State v. Patton, 260 N.C. 359, 132 S.E. 2d 891 (1963).

9. State v. Lowry, 263 N.C. 536, 139 S.E.2d 870 (1965); cert. den. Mallory v. North Carolina, 382 U.S. 22, 86 S.Ct. 227, 15 L. Ed.2d 16 (1965). See also United States v. Simmons, 2 Cir., 338 F.2d 804, 807 (1964); Sanchez v. United States, 9 Cir., 341 F.2d 225, 228 (1965).

10. State v. Hollars, 266 N.C. 45, 145 S.E. 2d 309 (1965).

the length of delay, it is manifest that over fifteen years from warrant to indictment is a long delay. However, the other factors mentioned in *Lowry* mitigate the effect of that delay. The petitioner has not shown to this Court that he was prejudiced in any way by the delay. This Court cannot follow the few cases which say that a long delay is prima facie evidence of prejudice to the defendant, when our circuit has repeatedly required a showing of prejudice.[11]

In addition, the delay has not been shown to have been an arbitrary act of the Cabarrus County officials designed to be oppressive. Petitioner was incarcerated in a South Carolina prison and was beyond the usual process of the North Carolina courts. The means of bringing him to Cabarrus County was available through the extradition provisions of the General Statutes,[12] but these procedures are not mandatory on the prosecuting attorney.[13] It is regrettable, if true, that petitioner did not know of the detainer placed against him in South Carolina until 1956, but that is not the fault of the prosecution in North Carolina.[14] It should be noted that petitioner made no effort to request that the charges against him be disposed of, by bringing him before a Grand Jury. Some courts have said that a delay caused by the defendant's imprisonment in another jurisdiction is really caused by the defendant's own wrongdoing, and thus, cannot be attributed to the prosecution.[15]

Finally, the petitioner has come as close to waiving his objection to not being brought on for trial as he could come.[16] Even assuming that he did not know of the detainer until 1956, he did not make any objection to the outstanding warrant during the remainder of his incarceration. He did not make any objection prior to trial, nor, except possibly at a vaguely remembered conference between his attorney and the trial judge, at his trial. This Court does not place sole reliance on this waiver point but only views it as a factor in the totality of circumstances to be considered.

Judging the circumstances of this case in the light of the principles set out in the cases for testing the fairness and reasonableness of delay, this Court cannot find a violation of petitioner's right to a speedy trial of constitutional proportions.

11. United States v. Lustman, 2 Cir., 258 F.2d 475 (1958); Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259 (1956). Compare the rule in our Circuit as set out in United States v. Banks, 4 Cir., 370 F.2d 141 (1966); United States v. Jackson, 4 Cir., 369 F.2d 936 (1966); Fields v. United States, 4 Cir., 370 F.2d 836 (1967).

12. See G.S. § 15–55 et seq.

13. G.S. §§ 15–59, 15–77. See also Bistram v. People of State of Minnesota, 8 Cir., 330 F.2d 450 (1964).

14. Since then, North Carolina has passed the Interstate Agreement on Detainers, G.S. § 148–89, which requires the warden to inform a prisoner of detainers placed against him in order to give the prisoner the opportunity to request disposition of outstanding warrants or indictments against him. This is similar to the old statutory provisions, in G.S. § 15–10.1 et seq., on detainers placed against North Carolina prisoners by the North Carolina courts.

15. Fouts v. United States, 6 Cir., 253 F.2d 215 (1958); Morland v. United States, 10 Cir., 193 F.2d 297 (1951); Nolan v. United States, 8 Cir., 163 F.2d 768 (1947), cert. den. 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130.

16. See Chinn v. United States, 4 Cir., 228 F.2d 151 (1955), and cases cited therein. Cf. language in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); and Fouts v. United States, supra, 253 F.2d at p. 218.

### 2. *Effective Assistance of Counsel*

■ Our Circuit Court has recently set out the time-honored law on this subject as follows:

" * * * while a defendant is undeniably entitled to a fair trial according to the law of the land, yet he is not guaranteed a perfect one, and where an attorney gives his client his complete loyalty and serves his cause in good faith and to the best of his ability, the due process requirement for effective assistance of counsel is generally met. * * * Morton v. Welch, 162 F.2d 840 (4th Cir. 1947). Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). This is especially true where, as here, the defendant chose and employed his own counsel." [17]

So it is in this case. The petitioner employed a well-known, highly competent attorney with extensive criminal trial experience. At the trial, the petitioner's attorney made timely objections to the admission of evidence, most of which were sustained. He conducted extensive cross-examination of the prosecuting witness and the police officer put on by the state. The attorney put the petitioner on the stand and capably led him through direct examination, objected to questions of the solicitor on cross-examination, and conducted a short re-direct examination. The attorney apparently used his best professional efforts on behalf of the petitioner. In fact, the petitioner must have been fairly well satisfied with the representation, for he alleges that he retained this same attorney to prosecute the appeal for him. At the very least, the representation was far from being "so transparently inadequate as to make a farce of the trial."

The fact that the record does not disclose a motion to quash the indictment on the ground of lack of a speedy trial does not make the representation at trial constitutionally inadequate, especially in view of the fact that the statute clearly did not require the solicitor to bring petitioner up from the South Carolina prison to try to indict him.[18]

As for the attorney's failure to perfect the petitioner's appeal, assuming for the moment that it be true, this Court has not found any precedent for making a finding of the ineffectiveness of counsel based on his neglect to perfect the appeal. To do so would be to infer backwards that because he neglected to perfect the appeal, he must have been ineffective at the trial.

### 3. *The Right to Appeal*

■ At common law there was no review of criminal convictions as of right.[19] Thus, an appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal.[20] "Due process does not comprehend the right of appeal." [21]

North Carolina law gives the right to an appeal to the Supreme Court of North

---

17. Root v. Cunningham, 4 Cir., 344 F.2d 1 (1965). See also "Incompetency of counsel chosen by accused as affecting validity of conviction." 74 A.L.R.2d 1390.

18. See footnote 13, supra.

19 District of Columbia v. Clawans, 300 U.S. 617, 627, 57 S.Ct. 660, 81 L.Ed. 843 (1936).

20. McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867 (1894). See also United States v. Robinson, 361 U.S. 220, 226, 80 S.Ct. 282, 4 L.Ed.2d 259 (1959) stating that right to appeal in criminal cases in federal court was of relatively recent origin (1889), and is to be strictly limited to the procedure prescribed by the statute.

21. Clawans, supra, 300 U.S. p. 627, 57 S. Ct. p. 663, 81 L.Ed. 847.

Carolina from convictions in criminal cases.[22] The statute provides that " * * an appeal shall be perfected and the case for the Supreme Court settled, as provided in civil actions." Various requirements for an appeal are set out in the statute.[23] Since there is no right to appeal outside the provisions of the statute, the requirements of the statute must be complied with for the appeal to be made. In this case, for one reason or another, petitioner did not comply with the statutory provisions for appeal. He gave notice of appeal at the trial, but failed to perfect the appeal.

There is some divergence of opinion among the courts on the effect of the neglect of counsel to perfect an appeal on a habeas corpus petitioner's rights. Our Circuit Court has said that failure to appeal may not be excused upon a mere showing of neglect of counsel.[24] Many cases hold that in order for the petitioner to receive an appeal he must show that plain error was made at the trial which would have made his appeal fruitful.[25] One case says that the state must show that an appeal would have been futile.[26] The weight of authority clearly stands for the proposition that the petitioner who claims he was denied his right to appeal through the neglect of counsel must show that his appeal would have been fruitful. This Court is persuaded to follow that line of authority. In this case, the petitioner has not shown that his appeal would have been fruitful. In fact, a writ of certiorari to the Supreme Court of North Carolina, after the post-conviction hearing, was denied, showing that that court deemed no questions worthy of review.

Petition dismissed.

22. General Statutes of North Carolina § 15–180.

23. See G.S. § 1–277 et seq.

24. Dennis v. United States, 4 Cir., 177 F. 2d 195 (1949).

25. Fennell v. United States, 10 Cir., 339 F.2d 920 (1965); Dodd v. United States, 9 Cir., 321 F.2d 240 (1963); Horton v. Bomar, 6 Cir., 335 F.2d 583 (1964); Mitchell v. United States, 103 U.S.App.D. C. 97, 254 F.2d 954 (1958); United States v. Peabody, 173 F.Supp. 413 (W. D.Wash.1958).

26. Desmond v. United States, 1 Cir., 333 F.2d 378 (1964).