STATE OF NORTH CAROLINA v. JAMES C. ROBERTS

No. 7414SC355

(Filed 7 August 1974)

Constitutional Law § 30— fourteen months between offense and trial —
no denial of speedy trial

    Defendant's right to a speedy trial was not abridged where four-
teen months elapsed between the offense and trial, the delay was due
to a crowded court docket, defendant did not communicate his request
for a speedy trial to the solicitor until the month before the case
was tried, and defendant did not show any prejudicial effect of the
delay.

APPEAL by defendant from *Clark, Judge,* 3 December 1973
Session of DURHAM County Superior Court.

The defendant was tried and convicted at the 18 September
1972 Session of Durham County Superior Court for the felony
of kidnapping and the misdemeanor of assault upon a female
under the age of twelve. That case was appealed to this court
and was decided by opinion reported at 18 N.C. App. 388. This
court held that the trial was free from prejudicial error and
the sentence was affirmed. However, the case was remanded
to the Superior Court with directions to conduct a hearing to
determine the reason for the delay and to allow the defendant
to present evidence upon the question of the delay. The pre-
siding judge was instructed to enter an order vacating the judg-
ment if he found that the defendant's constitutional right to
a speedy trial had been violated. If the presiding judge deter-
mined that the constitutional right of a speedy trial had not
been denied, he was instructed to find the facts and enter an
order denying the motion to dismiss and order commitment to
issue in accordance with the judgment previously entered.

A hearing was conducted as directed and both the solicitor
and the defendant testified. Following the hearing the court
made findings of fact and concluded that the defendant's right
to a speedy trial was not violated. From this ruling the defend-
ant gave notice of appeal.

The State's evidence tended to show that the defendant
was arrested by a warrant issued 19 July 1971, charging him
with assaulting a seven-year-old girl on the previous day. The
defendant made bond and was released. On 4 August 1971, the
defendant was arrested and charged with the felonies of store

breaking and larceny. An $8,000.00 bond was set and the defendant being unable to secure said bond remained in jail. On 17 August 1971, the Grand Jury returned a true bill of indictment charging the defendant with assaulting the child with intent to rape and with kidnapping her. Bond in these matters was set in the amount of $5,000.00. On 30 August 1971, the defendant filed an affidavit of indigency with the clerk and an attorney was appointed to represent him.

All cases were docketed for trial for the term beginning 20 September 1971, but the defense counsel did not confer with witnesses and did not subpoena witnesses at this time. The cases were not heard but were docketed for the term beginning 4 October 1971. The store breaking and larceny charges were called first and took the entire week, a verdict of guilty being returned on 8 October 1971. The defendant gave notice of appeal from an active sentence imposed thereon, and was committed to Central Prison on the following day.

On 9 August 1972, the docket was prepared for the term commencing 28 August. On 25 August 1972, the defendant filed a motion to dismiss for lack of speedy trial and at the same time subpoenaed his witnesses for trial calendared the following Monday, 28 August. The defendant's counsel notified the solicitor that it was necessary for him to be at a court-martial hearing at Camp Lejeune Marine Base which would take two to four days and requested a continuance. The cases were continued for the term and were calendared for the week commencing 20 September 1972. The trial commenced 21 September 1972, and was concluded the following day. The defendant subpoenaed various witnesses but did not present any evidence at the trial. The defendant, twenty-three years of age at the time of the trial, was shown to have had a long juvenile record commencing at the time he was eleven years old. He had been involved in approximately ten cases and had served one felony sentence, and he had also previously been convicted of assault with intent to commit rape. The defendant was sentenced to an active sentence of sixty years for the kidnapping and six months for the assault.

The State further introduced the docket for all terms of court from the week commencing 20 September 1971 through 28 August 1972. During this period of time eight hundred and forty-four true bills had been returned by the Grand Jury. In addition to the felonies, misdemeanor cases appealed from the

District Court were disposed of. Further evidence showed that there were never less than seventy-eight defendants confined in the Durham County jail awaiting trial during this period of time, and that ninety-one were confined at the beginning of the Session at which this case was tried.

The defendant testified that he could have made bond in either the store breaking or the kidnapping case, but could not afford bond in both. He testified that he was very anxious and nervous over the pending kidnapping charges. He stated that he had written his lawyer about a dozen times requesting his lawyer to get the matter docketed and had had his wife call his attorney to inquire about the delay. He further testified that he had sent notes to presiding judges a couple of times while he was in jail, but the contents or dates of these notes were not in the record.

The defendant maintained that he had two witnesses who would have been available to testify in his behalf had he received a speedier trial. One witness was not identified nor was the expected testimony revealed. The defendant testified that Captain Seagroves of the Durham police could have testified in his behalf and would have stated that the victim of the kidnapping told the police chief that she went with the defendant voluntarily for a distance of seventy-five to one hundred feet. The defendant stated that his attorney had told him that Chief Seagroves had told the attorney that Chief Seagrove did not recollect such a statement.

*Attorney General Robert Morgan, by Associate Attorney John R. Morgan for the State.*

*Loflin, Anderson and Loflin, by Thomas F. Loflin, III, for defendant-appellant.*

CARSON, Judge.

There is, of course, no hard and fast rule to determine when a delay is unreasonable. The leading case of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.ed. 2d 101 (1972), sets forth four factors to be considered in determining whether the sixth amendment right to a speedy trial has been denied. These tests are (1) the length of the delay (2) the reason for the delay (3) the extent to which the defendant has asserted his right to a speedy trial, and (4) the prejudicial effect of the delay to the

defendant. The delay in the Barker case was in excess of five years and the U. S. Supreme Court did not hold that that was unreasonable per se. While our solicitors must strive to docket cases as soon as possible to insure swift application of justice, we cannot ignore the increasing case load in many districts, especially those which are predominantly urban. Neither can we ignore the natural and commendable inclination to prosecute or dispose of the jail cases as soon as possible. A thirteen month delay, nothing else appearing, is not unduly long as a matter of law. *State v. Rawlings,* 18 N.C. App. 476, 197 S.E. 2d 47 (1973); *State v. Wrenn,* 12 N.C. App. 146, 182 S.E. 2d 600 (1971).

The next factor to be considered is the reason for the delay. The crowded dockets and the number of prisoners in jail awaiting trial are certainly reasons for the delay. *State v. Brown,* 282 N.C. 117, 191 S.E. 2d 659 (1972); *State v. George,* 271 N.C. 438, 156 S.E. 2d 845 (1967). The dockets introduced into evidence show that Durham County Superior Court was kept quite busy during the period of time in question. The defendant points out that during several weeks the docket broke down on Thursday, or even Wednesday afternoon on one occasion, and the court was adjourned for the week at that time. The solicitor stated that the week the court ended on Wednesday was the week of the solicitors' conference and it was necessary for him and his staff to attend. While we consistently urge the solicitors to carefully prepare their dockets and to utilize the court's time in the best possible fashion, we must also recognize that there are occasions when dockets will break down and some amount of time will not be best utilized. The record before us shows that the Durham County solicitor has indeed been diligent in preparing his dockets during this year's period of time, and has utilized a very high degree of efficiency of the court's time.

The third factor to consider is the extent to which the defendant has asserted his right to a speedy trial. The defendant here has been represented by the same attorney from 30 August 1971, until this appeal was heard. Although the defendant maintained that he requested his attorney on numerous occasions to obtain a trial for him, the record does not show that any such request was communicated to the solicitor until 25 August 1972. Obviously, the State cannot be charged with knowledge of communication between the attorney and his client. When the matter for a speedy trial was filed on 25 August, the matter was already set for the week beginning 28 August 1972.

It was continued one more time at the defendant's request until the term of 20 September 1972, at which time it was disposed of. No significant delay was encountered from the time the motion for the speedy trial was filed until the matter was docketed and heard.

The fourth matter to be considered is the prejudicial effect, if any, to the defendant. The defendant contended that two witnesses would have been available to him had the matter been docketed earlier. One witness and his expected testimony were never identified. The only other witness is the Chief of Police of Durham. Chief Seagroves was not called upon to testify at the trial and we may only guess at what his testimony may have been. The statement of the defendant that the Chief had told his attorney, and the attorney had told the defendant, that the Chief could not recall the events which transpired a year ago, does not seem compelling to us to show that any prejudicial effect resulted to the defendant, especially considering the defendant offered no evidence whatsover at the trial.

We hold that the trial court properly denied the defendant's motion to dismiss, and that the defendant did not suffer an unreasonable delay in violation of his rights guaranteed by the sixth amendment to the United States Constitution. *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972) ; *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965).

The order entered on 3 December 1973 directed that commitment issue in accordance with the judgment entered at the 18 September 1972 Session of that court. It then provided that he receive credit on his sentence for the period from the date of the original judgment and commitment, 22 September 1972 until 3 December 1973, and no other credit. The defendant was previously sentenced and credit was given under the provisions of G.S. 15-176.2. The pre-trial custody statute in effect at the time the latter order was entered was G.S. 15-196.1, effective 1 March 1973. The defendant should have been committed in accordance with the previous sentence pronounced 22 September 1972. Under its provisions, the defendant would have been given credit for all pre-trial time spent in custody from 17 August 1971 to 22 September 1972, and the judgment must be modified to this effect.

Modified and affirmed.

Judges BRITT and HEDRICK concur.