STATE OF NORTH CAROLINA v. DARLENE BUZZELLI

No. 7126SC172

(Filed 28 April 1971)

1. **Embezzlement § 6— embezzlement prosecution — sufficiency of evidence**
   Evidence of a bookkeeper's guilt of embezzlement was properly sub-
   mitted to the jury, where there was evidence that on 14 April 1969
   the bookkeeper received $7,820.79 of her employer's money in the
   course of her capacity as bookkeeper, and that the bookkeeper deposited
   only $7,200.79 in her employer's account and deposited the remaining
   $600.00 in her own account.

2. **Embezzlement § 5— competency of evidence — purchases by embezzler**
   In a prosecution charging a bookkeeper with twelve separate em-
   bezzlements, the last two occurring on 7 and 29 October 1969 for
   $3,200.00 and $200.00 respectively, it was proper to admit evidence
   that on 1 November 1969 the bookkeeper had made a cash purchase
   of an organ for $1,498.35.

3. **Embezzlement § 6; Criminal Law § 168— instructions — harmless error**
   Trial court's error in charging that embezzlement exhibits had
   been introduced in evidence, when in fact they had not, *held* harmless
   error in this embezzlement prosecution, where evidence as to the
   contents of the exhibits was before the jury either by testimony or
   by stipulation.

APPEAL by defendant from *Copeland, S.J.,* 19 October 1970
Schedule "C" Criminal Session of MECKLENBURG Superior
Court.

Defendant was charged in twelve bills of indictment with
embezzling various sums of money from her employer, Waters
Insurance & Realty Company, Inc., on twelve different dates
during the period from 14 April to 29 October 1969. The twelve
cases were consolidated for trial and defendant pleaded not
guilty in all cases.

The State offered evidence tending to show: Defendant was
employed as a bookkeeper by Waters Insurance & Realty Com-
pany, Inc. from June, 1968 through 20 November 1969. Her
starting salary was $350.00 per month, which was subsequently
raised to $365.00 and then, beginning July, 1969, to $380.00
per month. On a counter in the office where defendant worked,
the company kept a Burroughs Bookkeeping Machine, which
also served as a cash register. In addition to doing the posting
and bookkeeping work, according to the president of the com-
pany, defendant's duties included the following:

State v. Buzzelli

"It is Mrs. Buzzelli's job to take the cash from the machine and prepare deposit slips. It was no one else's job. It was Mrs. Buzzelli's job to determine how much money was to be deposited in the company's bank account. . . .

\* \* \* \* \*

"Along with other employees in the office, Mrs. Buzzelli took rents over the counter, punched the proper buttons, etc., to effectuate the recordation of rents and the giving of receipts to tenants. In addition to that, other instructions given to her were to empty the cash drawer or cash receptacle and remove it, in effect, from the front counter where the machine was and take it to her desk and at her desk she tabulated the money, she counted it, she packaged up in packages of $500 or $250. She added the checks and totaled them, she made out a deposit slip in her own handwriting and in effect bundled the money up for deposit. In addition, she was instructed to leave in the cash—in the office, a sum of money, roughly $1,200 to $1,500, based on her judgment, to be used from that point forward as working capital for the office, because we need that much money to cash checks and make change for other payments that would come in after the deposit was made up.

"With reference to the $1,200 to $1,500 which I mentioned which was left to make change after determining how much was needed for working capital by Mrs. Buzzelli, it was left in her desk, operating change was left in the machine for the next day or after the money was counted. When the original major portion of cash was removed from the machine back to her desk, which she did, then she took another cash receptacle and put it at the machine which had always $200 in it at the time to give the machine working money while she was tabulating the big cash receptacle."

After a desposit slip was returned to defendant from the bank, she had two places of entry where she recorded the deposit. The first was a Daily Deposit Book, which was a memorandum form of book used to post to the checkbook. The second place of entry was in a Cash Journal in a column headed "Bank." A certified public accountant, testifying as a State's witness, testified that normal accounting procedure would require that the amount shown on the deposit slips for a particular day be the same as

the amount shown in the Daily Deposit Book and under the column headed "Bank" in the Cash Journal for the same day. "That is because the bank has got to agree with the books."

An entry was made in defendant's handwriting in the column headed "Bank" in the Cash Journal under date of 14 April 1969 showing the amount of $7,820.79. Entries also in defendant's handwriting on the bank deposit slip and in the Daily Deposit Book for the same date showed $7,220.79, which was $600.00 less than appeared in the Cash Journal. On 14 April 1969 a cash deposit of $600.00 was made in defendant's personal bank account. Defendant never mentioned to her immediate supervisor or to the president of the company that there was a difference in the entries appearing in her handwriting in the company's books under date 14 April 1969. When, on 12 November 1969, the president of the company asked defendant for an explanation, she did not deny that all entries for that date were in her handwriting, but offered no explanation as to why the figure in the Cash Journal differed from the figure in the deposit slip and in the Daily Deposit Book.

There was also evidence of discrepancies in the figures relating to cash deposits in her employer's bank account entered in defendant's handwriting in her employer's books for other dates during the period from April to 29 October 1969.

In case No. 70-Cr-15597, in which defendant was charged with embezzling $600.00 on 14 April 1969, the jury found defendant guilty. In the eleven remaining cases the jury found defendant not guilty. From judgment imposing a prison sentence of not less than three nor more than five years in case No. 70-Cr-15597, defendant appealed.

*Attorney General Robert Morgan by Staff Attorney Howard P. Satisky for the State.*

*Mraz, Aycock & Casstevens, by Nelson M. Casstevens, Jr., for defendant appellant.*

PARKER, Judge.

[1] Appellant first assigns as error the denial of her motions for nonsuit. To convict a defendant of embezzlement in violation of G.S. 14-90, our Supreme Court has declared that "four distinct propositions of fact must be established: (1) that the

defendant was the agent of the prosecutor, and (2) by the terms of his employment had received property of his principal; (3) that he received it in the course of his employment; and (4) knowing it was not his own, converted it to his own use." *State v. Block,* 245 N.C. 661, 97 S.E. 2d 243; *State v. Blackley,* 138 N.C. 620, 50 S.E. 310.

When the evidence in the case before us is viewed in the light most favorable to the State and the State is given the benefit of every reasonable inference which may be fairly drawn therefrom, as the courts of this State are required to do when passing on a motion for nonsuit, *State v. Block, supra,* there was in this case evidence tending to show, or from which reasonable inferences may be drawn as tending to show, every essential element of the crime of embezzlement within the purview of the statute, G.S. 14-90. The State's evidence would support a jury finding of the following facts: (1) Defendant was the employee of Waters Insurance & Realty Company, Inc. who was charged with the duty of receiving money of her employer each day, deciding how much should be deposited each day in her employer's bank account, and recording the amount thereof in a Cash Journal, on a bank deposit slip, and in a Daily Deposit Book. (2) Defendant's handwriting in making these entries under date 14 April 1969 show circumstances from which a jury could legitimately find that defendant did receive on that date her employer's money in the amount of $7,820.79, which is the figure she entered in the Cash Journal in the column headed "Bank." (3) Defendant received this money in the course of her employment in her capacity as bookkeeper for her employer. (4) Defendant, knowing the money was not her own, caused only $7,220.79 thereof to be deposited in her employer's bank account and deposited the remaining $600.00 in her own account, from which the jury could legitimately find that defendant fraudulently embezzled and converted to her own use the sum of $600.00 of her employer's funds.

Appellant's contention that her motion for nonsuit should have been granted, else any bookkeeper might be convicted of embezzlement upon a mere showing of the making of an incorrect entry in the employer's books, is without merit. It is, of course, true that "[t]he mere making of false entries in books of account is not sufficient evidence of an act of conversion constituent to the crime of embezzlement, regardless of the defendant's fraudulent intent at the time of making such a false

entry. But depositing funds of another in one's own account, together with the making of incorrect entries in books of account, and failing to turn the other's funds over to him at a time when obligated to do so, is sufficient evidence of conversion." 26 Am. Jur. 2d, Embezzlement, § 56, p. 609. There was no error in denying defendant's motion for nonsuit.

[2]  Defendant asserts error by the trial court in denying her motion to suppress evidence that on 1 November 1969 she had made a cash purchase of a Gulbranson organ for the sum of $1,498.35. "Evidence that during a period in which a defendant had allegedly been guilty of embezzling money from his employer the defendant spent money considerably in excess of his known income or made large bank deposits has been held admissible." Annotation, 91 A.L.R. 2d 1056, § 7. Had the embezzlement of $600.00 on 14 April 1969 been the only charge against defendant, the evidence that she made a large cash purchase on 1 November 1969 might possibly be considered as too remote and conjectural to have probative value. In this case, however, defendant was charged with twelve separate embezzlements, the last two of which were alleged to have occurred on 7 and 29 October 1969 for $3,200.00 and $200.00 respectively. As to those two charges, the evidence of her large cash purchase made on 1 November 1969 was clearly not too remote and was admissible at least as bearing on those charges. Since the jury found her not guilty on those two charges, we cannot see how she was prejudiced by the admission of this evidence in the case charging embezzlement on 14 April 1969, as to which she was found guilty.

[3]  Defendant's final assignment of error is that the trial judge committed error in charging the jury that certain exhibits referred to in the testimony of the witnesses for the State had been introduced in evidence when the record does not reveal that these exhibits were in fact so introduced. The exhibits in question, which were bank deposit slips and pages from the employer's books and records, would have been admissible in evidence had they been introduced. The reason they were not introduced, whether from inadvertence or for other cause, does not appear in the record. While it was error for the court to charge the jury that these exhibits had been introduced in evidence when in fact they had not, it was nonprejudicial error in this case. The State's Exhibit No. 16, which was the deposit slip showing the deposit of only $7,220.79 in the employer's bank

account on 14 April 1969, was introduced and admitted in evidence, and the State's witnesses testified without objection at length and in detail as to the contents of all of the other exhibits. During the course of the trial the State and the defendant even stipulated and agreed that State's Exhibit No. 29, which was the page from the Cash Journal showing entries for 14 April 1969, indicated a figure that is $600.00 more than is shown on State's Exhibit No. 16 (see page 30 of the record on appeal). Since evidence as to the contents of all of the State's exhibits was before the jury, either by testimony of State's witnesses which had been admitted without objection or by stipulation of the parties, defendant could have suffered no prejudice when the trial judge inadvertently referred to the exhibits as having been offered in evidence.

In the trial and judgment appealed from, we find

No error.

Chief Judge MALLARD and Judge VAUGHN concur.