STATE OF NORTH CAROLINA v. FORREST LEE FATE ALIAS
RAYMOND SHARPE

No. 787SC345

(Filed 19 September 1978)

1. **Constitutional Law § 52— speedy trial—no showing that delay was negligent or wilful and prejudicial**

    The trial court did not err in denying defendant's motion to dismiss for failure to provide a speedy trial where defendant was picked up in New York on 4 February 1977 and returned to N.C. for trial on 28 September 1977; he was incarcerated for other offenses during the delay; he made no written request for final disposition of the indictment, as required by the Interstate Agreement on Detainers, N.C.G.S. 15A-761, Art. III(a); and there was no showing in the record that, had there been a hearing on the merits of the motion, defendant could have shown wilfulness, neglect or prejudice in the delay.

2. **Criminal Law §§ 66.9, 66.16— pretrial photographic identification—propriety—independent origin of in-court identification**

    A pretrial photographic identification procedure which occurred six weeks after the alleged crime was not impermissibly suggestive where the robbery victim was shown ten double photographs, full face and profile, of persons similar to defendant in age, build and features, and the victim chose defendant's photograph from among them; moreover, even if the pretrial photographic identification had been impermissibly suggestive, evidence was sufficient to support a finding that the victim's in-court identification of defendant was of independent origin where it tended to show that the victim observed defendant at the well lighted crime scene for at least a minute; the robber's face was uncovered except for dark glasses; and the victim testified that her identification of defendant was based solely on her observation of him at the crime scene.

**3. Indictment and Warrant § 17.4— robbery —ownership of property taken —no variance between indictment and proof**

There was no fatal variance between an indictment which charged robbery of a motel and evidence which showed robbery of both the motel and an employee of the motel, since an indictment need not specify the person who owned the property taken.

**4. Criminal Law § 87— witness acquainted with juror —no motion to strike testimony —no request for voir dire**

Defendant's contention that it was error to admit the testimony of a rebuttal witness who was acquainted with a juror and whose name had not been given to the defense prior to trial is without merit, since defendant, when he learned of the witness's acquaintance with the juror, neither moved to strike the witness's testimony nor requested a voir dire to determine the relationship between the juror and the witness; moreover, the witness's testimony went only to a peripheral matter and not to the crime with which defendant was charged.

**5. Criminal Law § 113.9— jury instruction on possible verdicts —"not guilty" omitted —error corrected**

Defendant was not prejudiced where the trial court failed to include "not guilty" in his statement of the possible verdicts, since the judge immediately corrected himself when his error was pointed out and then stated correctly the two possible verdicts of guilty and not guilty.

**6. Criminal Law § 126— polling jury —failure of juror to answer questions —no inquiry required**

Where a juror answered only two of the four questions put to him during polling of the jury, the trial court did not err in failing to inquire into the juror's failure to answer those questions, since defendant did not ask the judge to inquire further at the time and the juror did answer twice that the guilty verdict was his verdict.

APPEAL by defendant from *James, Judge.* Judgment entered 29 November 1977 in Superior Court, WILSON County. Heard in the Court of Appeals 23 August 1978.

Defendant was indicted and tried for armed robbery. Prior to trial defendant asked that the charges against him be dismissed because he had been denied a speedy trial. The judge denied the motion.

The State presented evidence that at about 10:45 p.m. on 4 January 1977, Esther Vinson, the clerk at the Wilson Holiday Inn, was robbed by a very young black man wearing dark glasses and a toboggan. The robber pointed a gun at Ms. Vinson and took from her about $300 of the motel's money and $30 of her own

money. Esther Vinson testified that she saw the robber face to face in the bright light of the motel lobby for at least a full minute. She said that she had been robbed before, and was not upset or frightened during the robbery.

When the police officers came to investigate, Esther Vinson told them that the robber was very young and short, a slightly-built black man wearing a toboggan and dark glasses. She did not describe his facial features to them, but she testified that she had noticed his large nose and mouth.

On 13 February 1977, Detective Moore of the Wilson Police Department visited Esther Vinson at her home. He gave her a group of ten double photographs, full face and profile, and asked her whether there was a photograph in the group of the man who had robbed her. Detective Moore testified that Forrest Fate was a suspect at the time, and the photographs had been selected to be similar to Fate's in age, build, features, etc. Esther Vinson testified that she studied the photographs for several minutes and went over them two or three times before picking out the photograph of the defendant.

Ms. Vinson identified the defendant at trial as the man who had robbed her. She testified on *voir dire* that her in-court identification was based on her observations during the hold-up and nothing else.

The defendant testified that he did not go to the Holiday Inn at all on 4 January, and that he had never worn a toboggan or dark glasses. He was at his aunt's house with his family when the robbery occurred. Fate's cousin testified that she had been with him in his aunt's house at that time.

The State presented a rebuttal witness to impeach defendant's credibility. Defendant objected to this witness when he was called since his name had not been furnished prior to trial as a potential witness.

Defendant was convicted of armed robbery and sentenced to 16 to 20 years. From that conviction defendant appeals.

*Attorney General Edmisten, by John R. B. Matthis, Special Deputy Attorney General, and Alan S. Hirsch, Assistant Attorney General, for the State.*

*Farris, Thomas & Farris, P.A., by Robert A. Farris, for defendant appellant.*

ARNOLD, Judge.

## I.

[1]  The defendant first assigns as error the denial of his motion for dismissal for failure to provide a speedy trial. Defendant was picked up in New York on 4 February 1977, and returned to North Carolina for trial on 28 September 1977. As defendant testified on cross-examination, "I have been in jail since February 4th. That was not because of this case." Defendant made no written request for final disposition of the indictment, as required by the Interstate Agreement on Detainers, N.C.G.S. § 15A-761, Art. III(a). There is no showing in the record that had there been a hearing on the merits of the motion defendant could have shown wilfulness, neglect or prejudice in the delay, as he is required to do. 3 Strong's N.C. Index 3d, Constitutional Law § 52.

Defendant's incarceration on other offenses during the delay, while not mitigating against his rights to a speedy trial, *State v. Frank,* 284 N.C. 137, 200 S.E. 2d 169 (1973), is an indication of lack of prejudice. *State v. Smith,* 270 N.C. 289, 154 S.E. 2d 92 (1967). In the absence of a motion for speedy trial, or any showing of prejudice or purposeful delay, this Court has repeatedly held that the right to a speedy trial has not been denied. *See, e.g., State v. Weddington,* 28 N.C. App. 269, 220 S.E. 2d 853 (1976); *State v. Baysinger,* 28 N.C. App. 300, 220 S.E. 2d 831 (1976); *State v. Jackson,* 27 N.C. App. 675, 219 S.E. 2d 816 (1975). We find no error in the denial of the motion.

## II.

[2]  The defendant next contends that the trial judge should not have allowed Esther Vinson to identify him in court. He appears to argue both that the pretrial identification was tainted and that there was no basis other than the photographs for the in-court identification. We disagree on both points.

The due process test for pretrial identification procedures is whether the total circumstances were so unnecessarily suggestive as to offend fundamental standards of justice. *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), modified on other grounds, 428 U.S. 902 (1976); 4 Strong's N.C. Index 3d, Criminal Law § 66.3. Our Supreme Court has held that it is not improper for the police to submit to the victim of an armed robbery 7 or 8 photographs that generally fit the victim's description of the robber, *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970), as was done in this case. Photo identifications prior to trial repeatedly have been found not suggestive where, as here, a number of similar photographs were given in a group to the victim for her inspection. *State v. Accor*, 277 N.C. 65, 175 S.E. 2d 583 (1970); *State v. Jacobs*, 277 N.C. 151, 176 S.E. 2d 744 (1970); *State v. Johnson*, 20 N.C. App. 53, 200 S.E. 2d 395 (1973), *app. dismissed* 284 N.C. 620, 202 S.E. 2d 276 (1974); *State v. Bumper*, 5 N.C. App. 528, 169 S.E. 2d 65, *aff'd* 275 N.C. 670, 170 S.E. 2d 457 (1969). Defendant suggests that the time between the robbery and the photo identification was impermissibly long, but in *State v. McKeithan*, 293 N.C. 722, 239 S.E. 2d 254 (1977), the court did not suggest that the month that passed between the crime and the witness's identification of the defendant's photo was long enough to make the identification violative of due process. Neither do we find that the six week period here made the identification procedure impermissibly suggestive.

Even if the pretrial identification had been impermissibly suggestive, there is sufficient evidence in the record to support a finding that Ms. Vinson's in-court identification of defendant had an independent basis. "An in-court identification is competent, even if the pretrial . . . identification procedures were improper, where the in-court identification . . . is based on the witness' observations at the time and scene of the crime." 4 Strong's N.C. Index 3d, Criminal Law § 66.14. When asked "Then are you basing your identification here in court today on what happened in January at the Holiday Inn and nothing else at all?" Ms. Vinson testified, "That's right." In addition, there was testimony that Ms. Vinson stood face to face with the robber for at least a minute in a brightly-lighted place, and that the robber's face was uncovered except for dark glasses. Ms. Vinson testified that she had no doubt of the correctness of her identification. "Where there is a

reasonable possibility of observation sufficient to permit subsequent identification, the credibility of the witness's identification of the defendant is for the jury. . . ." 4 Strong's N.C. Index 3d, Criminal Law § 66.1. The judge did not err in allowing the in-court identification.

Nor is there merit to defendant's contention that Esther Vinson identified the defendant merely because he was seated next to defense counsel. "Defendant's contention that a robbery victim came to the courtroom mentally preconditioned to identify as the robbers whoever might be the defendants on trial . . . has been held without merit." 4 Strong's N.C. Index 3d, Criminal Law § 66, citing *State v. Tyson*, 278 N.C. 491, 180 S.E. 2d 1 (1971).

## III.

[3] Defendant's assertion that his motion for arrest of judgment should have been allowed for fatal variance between the indictment and the evidence is answered by *State v. Johnson:* "[A]n indictment for robbery need not specify the person who owned the property taken." *Supra* at 55, 200 S.E. 2d at 396. There was no fatal variance when the indictment charged robbery of the Holiday Inn and the evidence showed the robbery of both the Holiday Inn and Ms. Vinson.

## IV.

[4] Next the defendant argues that it was error to admit the testimony of a rebuttal witness who was acquainted with a juror, and whose name had not been given to the defense prior to trial. The contention is that the defense was deprived of an opportunity to question prospective jurors about any relationship with the witness and determine whether such a relationship would affect the weight given by the jury to the witness's testimony. However, as the State points out, when the fact that one juror was known to the witness came out on the final question in cross-examination, the defense neither moved to strike the witness's testimony nor requested a *voir dire* to determine the relationship between the juror and the witness. The defense has not shown any prejudice on the part of the juror, nor asked at the appropriate time to investigate the possibility of such prejudice. In addition, the witness's testimony went only to a peripheral matter and not to the robbery with which defendant was charged. In

light of these facts we find the defendant's argument without merit.

## V.

[5]   The defendant assigns error to a number of phrases in the charge to the jury. We will deal only with the judge's statement of the possible verdicts, that is: "[Y]ou may return a verdict of guilty of robbery with a firearm, as charged; or, you may return a verdict of guilty." On being corrected by the District Attorney, the judge then corrected himself, saying: "I beg your pardon. You may return a verdict of guilty, number one, or, you may return a verdict of not guilty, number two, one of those two possible verdicts." Defense counsel argues that this misstatement of the possible outcomes was irreparably prejudicial. We disagree. The judge immediately corrected himself when his error was pointed out, and then stated correctly the two possible verdicts. It is absolutely unreasonable to infer that the jurors failed to understand that "not guilty" was a possible verdict in this criminal trial.

## VI.

[6]   Finally, we deal with defendant's contention that the trial court accepted a jury verdict that was not unanimous. The record shows that after the jury's verdict was returned, defense counsel asked that the jury be polled. Carney Lee Roberson was the first juror questioned, as follows:

"CLERK: Do you find the defendant, Forrest Lee Fate, guilty of the charge of robbery with a firearm?

"A. Yes.

"CLERK: Is this your verdict?

"A. (No response)

"CLERK: Do you still assent thereto?

"A. (No response)

"CLERK: Do you still say this is your verdict?

"A. Yes."

The defendant argues that the trial judge should have inquired into the juror's failure to answer the second and third questions.

---

We note that defendant could at that time have asked the judge to inquire further. We find it is sufficient that the juror twice answered that the guilty verdict was his verdict. In numerous North Carolina cases variant answers by jurors to the clerk's questions when polling have been found to be no error. *See Nolan v. Boulware,* 21 N.C. App. 347, 204 S.E. 2d 701, *cert. denied* 285 N.C. 590, 206 S.E. 2d 863 (1974); 4 Strong's N.C. Index 3d, Criminal Law § 126.1. The important thing is that all jurors clearly indicate their assent to the verdict, and Roberson did so here.

Having also found no merit in defendant's other assignments of error, we find that defendant received a fair trial and the judgment of the trial court is upheld.

No error.

Chief Judge BROCK and Judge MARTIN (Robert M.) concur.