STATE OF NORTH CAROLINA v. CHESTER O. SUTTON

No. 811SC95

(Filed 4 August 1981)

1. **Embezzlement § 1— elements of the crime**
   The elements of embezzlement are: (1) defendant must be the agent of the prosecutor; (2) by the terms of his employment he must receive the property of his principal; (3) he must receive the property in the course of his employment; and (4) he must convert the property to his own use knowing it not to be his own.

2. **Embezzlement § 6— sufficiency of evidence**
   The State's evidence was sufficient to support defendant's conviction of embezzlement of money where it tended to show that defendant was the assistant manager of a fast food restaurant; defendant operated the restaurant cash register on certain dates so that it would develop a cash surplus; defendant did not report any surplus to the manager and failed to note a surplus on his work sheets; and food inventory was leaving the restaurant without being accounted for, since the jury could reasonably infer from such evidence that defendant sold the missing inventory, generating a secret surplus, and that this surplus was going into defendant's pocket.

3. **Embezzlement § 6— sufficiency of evidence**
   The State's evidence was sufficient to support defendant's conviction of embezzlement of uniform and meal maintenance coupons where it tended to show that defendant was the assistant manager of a fast food restaurant; defendant was authorized to issue himself one coupon per day worked; defendant issued to himself more than one coupon per day worked; and no one authorized him to issue more than one.

4. **Embezzlement § 5— defendant's monthly payments—relevancy**
   Evidence of defendant's monthly payments which tended to show that defendant was living far above the standard to be expected of one earning $265 a week was relevant in this embezzlement prosecution to establish motive.

**5. Embezzlement § 5— large cash transactions by defendant—relevancy**

> Three large cash transactions by defendant in April were not too remote to be relevant to establish his guilt of embezzlement in the preceding November, December, and January where the amount of cash involved was grossly disproportionate to defendant's apparent ability to amass such wealth.

**6. Criminal Law § 126.1— method of polling jury**

> In this prosecution of defendant upon five charges of embezzlement, the procedure used to poll the jury substantially complied with the requirements of G.S. 15A-1238 where the clerk stated separately to each juror that such juror had returned a verdict of guilty as to Issue No. 1, guilty as to Issue No. 2, guilty as to Issue No. 3, guilty as to Issue No. 4, and guilty as to Issue No. 5, and the clerk then asked each juror whether that was his verdict and whether he still assented thereto.

APPEAL by defendant from *Reid, Judge.* Judgment entered 5 September 1980 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 27 May 1981.

Defendant was tried on five separate bills of indictment. Three of the indictments allege, respectively, that defendant embezzled certain money in the form of U.S. coin and currency on 17, 19, and 22 January 1980. The other two indictments charge defendant with embezzling Hardee's Food Systems Restaurant Uniform and Meal Maintenance Coupons in the months of November and December 1979. Defendant appeals from an adverse verdict and a judgment imposing a prison term of not less than one nor more than two years and requiring that defendant make restitution to Hardee's Food Systems in the amount of $1,429.10.

STATE'S EVIDENCE

Defendant was an assistant manager at Hardee's in Elizabeth City. His duties were to be in charge of a shift. This included helping the cash register operators to take orders and ring up sales during peak rush periods. He was also required to count the receipts at the end of a shift, to check those receipts against the cash register tapes to assure that there were sufficient receipts to cover the sales reflected on the tapes, and to deposit the receipts.

The manager and five other witnesses (four Hardee's employees and one customer) testified that they had observed defendant improperly operate the cash register he was using on

one or more of the following three days: 17 January 1980, 19 January 1980, 22 January 1980. The witnesses testified that defendant would take an order from a customer and ring up a subtotal, he would write this amount down on a pad, he would then ring up the tax on the sale, he would add these two figures by hand, and finally he would strike the "print," or "no sale," or "clear" button on the cash register so that the sale was never totaled and the receipt of the cash for the sale was never reflected on the cash register tape. He would open the cash register drawer to deposit the money received from the sale by use of a key or by striking the "no sale" button. In this manner the register would take in more cash during a shift than would be reflected on the cash register tape.

In addition to their function as cash registers, the registers also functioned as computers, keeping a running account of the inventory going out of the store. The manager testified that in the month of January 1980 there had been severe inventory shortages; that is, the inventory was being depleted substantially more rapidly than the computer records indicated. He testified that he checked the cash register tape for the register which defendant operated on 19 January 1980 and found items on the tape which were never totaled so that they would not appear as depletions of inventory. Comparing these items with the shortages in actual inventory that occurred that day, the manager found that "they were almost identical."

The manager testified that defendant did not report any cash surplus to him, that defendant did not have permission from Hardee's to operate the machine in the manner described, and that he did not have permission to fail to report a cash surplus or to retain such surplus for himself. He testified that the excessive inventory shortages had occurred during the last half of 1979 and during January of 1980, that these shortages amounted to approximately a thousand dollars a month, and that the shortages had ceased immediately upon termination of defendant's employment.

The testimony of three employees of various lending institutions indicated defendant was committed to the following monthly payments: $263.97 for a 1978 Lincoln Continental, $222.83 for a 1979 Dodge van, $121.41 for a 1975 GMC pickup truck, $324.00 for his home, all of which were titled in defendant's name alone, or

jointly with his wife. Defendant also paid $402.10 semi-annually in automobile insurance premiums. There was also testimony that in April of 1980, defendant purchased an official check from the First Union National Bank in the amount of $6,000 and paid for it with sixty $100 bills; that he deposited $14,840.81 in his account at Wachovia Bank in April, $14,000 of which was deposited in cash in $100 bills; and that defendant purchased a store in April 1980 for $16,000 by check. Defendant made $265 a week as assistant manager at Hardee's.

The Hardee's manager testified that each employee is allowed one Uniform and Meal Maintenance Coupon for each day worked and that the coupons could be used like money by employees to defray the cost of cleaning their uniforms or to obtain free meals. As an assistant manager defendant was authorized to issue the coupons. Defendant worked thirteen days between 11 November and 29 November 1979 and during that time issued himself eighteen coupons. He worked twenty-seven days in December 1979 and issued himself thirty coupons. No one authorized defendant to issue himself more than one coupon per day.

### DEFENDANT'S EVIDENCE

Defendant testified in his own behalf that he had an excellent employment record and that he had had no trouble with Hardee's Food Systems until he filed charges of racial discrimination against the company with the Equal Employment Opportunity Commission in 1979. He never improperly operated the cash register. Other employees came up short on their receipts. Other people were assisting him with his monthly expenses and the payments on his home and various motor vehicles. These others included his wife, who was engaged in full-time and part-time employment; his parents; and his wife's parents. The loan against his 1975 GMC pickup was an accommodation for a friend who had not been in town long enough to establish credit and the $121.41 a month payment was being made by the friend. Defendant admitted that if the cash register had been used in the manner the State's witnesses described, it would create a cash surplus and an inventory shortage.

With regard to the Uniform and Meal Maintenance Coupons, defendant explained that there had been a temporary shortage of

the coupons in May and June of 1979 and that he had not gotten around to paying himself back for coupons he had missed during this period until November and December of 1979. He admitted the coupons had been restored in the latter part of June or early July, but said he failed to issue himself the back coupons at that time although he supposed he could have.

Defendant also presented the testimony of five other Hardee's employees to the cumulative effect that defendant was a good employee, that they never saw defendant improperly operate the cash register, that defendant was not the only person with access to the cash registers or the tapes, and that the cash registers had malfunctioned on more than one occasion in the past.

*Attorney General Edmisten by Assistant Attorney General Ben G. Irons, II for the State.*

*Whitted, Jordan & Matthewson by Louis Jordan and Reginald Kenan for defendant appellant.*

CLARK, Judge.

Defendant's attorney violated Rule 28(b)(3) of the North Carolina Rules of Appellate Procedure which requires that exceptions and assignments of error be set out after each question argued in appellant's brief. Although we elect to reach the merits of defendant's case as authorized under Rule 2, we note that defendant, by not referring us to the point in the record where the alleged error occurred, has placed upon this Court the responsibility of searching the record for the exceptions and assignments of error upon which he bases his argument. Defendant will not be heard to protest that a particular argument was addressed to certain objections, exceptions, or assignments of error not attributed to that argument by this Court, since defendant was afforded the opportunity in his brief to direct our attention anywhere in the record he wished, but chose not to do so.

[1] Defendant first argues that his motions to dismiss at the close of the State's evidence, at the close of all evidence, and after the verdict should have been granted because the State failed to offer substantial evidence of each material element of embezzlement. *See State v. Seufert*, 49 N.C. App. 524, 271 S.E. 2d 756

(1980). The elements of embezzlement are as follows: (1) defendant must be the agent of the prosecutor; (2) by the terms of his employment he must receive the property of his principal; (3) he must receive the property in the course of his employment; and (4) he must convert the property to his own use knowing it not to be his own. *State v. Ellis*, 33 N.C. App. 667, 236 S.E. 2d 299, *cert. denied*, 293 N.C. 255, 236 S.E. 2d 708 (1977); *State v. Buzzelli*, 11 N.C. App. 52, 180 S.E. 2d 472, *cert. denied*, 279 N.C. 350, 182 S.E. 2d 583 (1971); *see State v. Helsabeck*, 258 N.C. 107, 128 S.E. 2d 205 (1962). Defendant argues that the fourth element of embezzlement is not supported by substantial evidence. We disagree.

[2] The State presented evidence that defendant improperly operated the cash register so that it would develop a cash surplus for the days for which he was indicted, but that he did not report any surplusage to the manager and he failed to note a surplus on the work sheets. There was also evidence that inventory was leaving the store unaccounted for. From this evidence the jury could reasonably infer that defendant sold this missing inventory, generating a secret surplus, and that this surplus was going into defendant's pocket. This is certainly more than a scintilla of evidence that defendant converted the money to his own use and thus satisfies the substantial evidence test. *See State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979); *see also, State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684, *cert. denied*, 439 U.S. 830, 58 L.Ed. 2d 124, 99 S.Ct. 107 (1978). It goes without saying that the jury could permissibly infer that defendant knew that money he received in payment for Hardee's inventory was not his own.

It was not necessary for the State to establish defendant's control and possession of the property to the exclusion of all others. *State v. Barbour*, 43 N.C. App. 143, 258 S.E. 2d 475 (1979).

Defendant argues that there is a fatal variance between the indictment and the State's proof. The sufficiency of the indictments is not challenged. Defendant's argument is merely a meritless restatement of his argument that his motions to dismiss should have been granted for lack of substantial evidence.

[3] Defendant argues that his motions to dismiss should have been granted as to the indictments for embezzling coupons, because the State failed to offer evidence that he wrongfully took the coupons with fraudulent intent. On this issue the evidence

taken in the light most favorable to the State tended to show that the store had run out of coupons only once before November and December of 1979 and that those back coupons were restored to the employees no later than the first of July 1979. The State also presented evidence tending to show that upon first being confronted with his issuance to himself of unauthorized coupons, defendant said nothing about paying himself back for coupons he had missed in the past, but claimed he was entitled to the coupons because he had worked double shifts on some of the days in November and December 1979. When confronted with time sheets for those months which belied his statement, defendant admitted that he had not worked double shifts.

The evidence was that defendant was authorized to issue himself one coupon per day worked, that he issued more than one coupon per day worked, and that no one ever authorized him to issue more than one. This evidence permitted the inference that defendant knew he was exceeding his authority when he issued himself extra coupons to which he was not entitled. Our holding then is in substantial accord with the holding of this Court in *State v. Barbour*, 43 N.C. App. 143, 258 S.E. 2d 475 (1979):

> "We hold the trial court did not err in denying defendant's motions for dismissal. The test to be applied in ruling on a motion to dismiss is whether there is 'substantial evidence of all material elements of the offense to withstand the motion to dismiss.' *State v. Stephens*, 244 N.C. 380, 383, 93 S.E. 2d 431, 433 (1956). Such a motion requires consideration of the evidence in the light most favorable to the state; the state is entitled to every reasonable inference which may be drawn from the evidence. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). The substantial evidence may be circumstantial or direct, or both. *State v. Stephens, supra.* The court is not required to find that the evidence excludes every reasonable hypothesis of innocence in denying a defendant's motion to dismiss. To do so would constitute the presiding judge the trier of facts. Substantial evidence of every material element of the crime charged is required before the court can submit the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. *Id.*

\*    \*    \*    \*

Although it is a basic tenet of our criminal law system that proof of guilt beyond a reasonable doubt is required before the jury can convict, once the trial court finds that substantial evidence exists to take the case to the jury, 'it is *solely* for the jury to determine whether the facts taken singly or in combination satisfy them beyond a reasonable doubt that the defendant is in fact guilty.' *State v. Smith*, 40 N.C. App. 72, 79-80, 252 S.E. 2d 535, 540 (1979). The jury returned a verdict of guilty in this case, and there is no reason for this Court to reverse that verdict."

*Id.* at 147-49, 258 S.E. 2d at 478-79.

[4]   Defendant argues that evidence of his monthly payments was irrelevant and highly prejudicial. We hold that evidence which tended to show that defendant was living far and away above the standard to be expected of one earning $265 a week was relevant to establish motive. *See* 1 Stansbury's N.C. Evidence §   83 (Brandis rev. 1973) and cases cited therein.

[5]   Defendant argues that evidence of three large cash transactions in April was not relevant to prove his guilt of embezzlement in the preceding November, December, and January. We disagree. That defendant possessed extensive unexplained wealth would appear relevant to the issue of whether he had taken money from Hardee's. *See* Annot., 91 A.L.R. 2d 1046, 1056 (1963). The fact that these transactions took place over two months after defendant's employment was terminated might somewhat diminish their probative value; however, in light of defendant's income of less than $14,000, in light of the large sums of money involved in the three transactions ($20,000 in $100 bills and a check for $16,000), and in light of the restaurant manager's statement that the shortages had averaged around $1,000 a month from sometime prior to August 1979 until February 1, 1980, we are unable to say that the passage of two short months rendered the transaction so remote as to be devoid of any probative force. Defendant's reliance on *obiter dictum* in *State v. Buzzelli*, 11 N.C. App. 52, 180 S.E. 2d 472, *cert. denied*, 279 N.C. 350, 182 S.E. 2d 583 (1971), is misplaced for the reason that that case involved a substantially smaller transaction occurring almost seven months after the alleged embezzlement. As the size of the fund embezzled

and of the unexplained wealth increase, their probative force increases as well. While lapse of time serves to diminish that probative force, it will not totally vitiate it where as here the unexplained wealth is so grossly disproportionate to the defendant's apparent ability to amass such wealth. This testimony was relevant and properly admitted. The jury was free to consider the remoteness of the transactions as bearing on the weight it wished to attach to the evidence.

Defendant next argues that the court properly allowed a State's witness to testify from records and to introduce certain exhibits without laying the proper foundation. In these assignments, defendant contends that the trial court should not have permitted a private investigator to testify from reports written by him. Defendant contends that the Court allowed the witness to refresh his recollection even though he had not indicated a loss of memory. Defendant concedes that trial counsel did not object to the State's attempt to refresh the recollection of its witness or to the lack of a proper foundation for the introduction of the records. The Defendant's failure to object in either instance constitutes a waiver and the Court properly submitted the evidence to the jury for its consideration. 1 Stansbury's North Carolina Evidence § 27 (Brandis rev. 1973).

[6] In his final argument defendant contends that the Clerk improperly polled the jury. The record indicates that the Clerk stated separately to each juror that that juror had returned a verdict of guilty as to Issue No. 1, guilty as to Issue No. 2, guilty as to Issue No. 3, guilty as to Issue No. 4, and guilty as to Issue No. 5. He then asked that juror whether that was his verdict, to which the juror assented, and whether he still assented thereto, to which the juror replied in the affirmative. This procedure was repeated twelve different times, the only variation was that with the first two jurors the Clerk identified separately each of the five issues as "embezzling money" or "embezzling coupons." Thereafter, with the other ten jurors he denominated the charges only as Issues No. 1, No. 2, No. 3, No. 4 and No. 5. "The important thing is that all jurors clearly indicate their assent to the verdict . . . ." *State v. Fate*, 38 N.C. App. 68, 75, 247 S.E. 2d 310, 314 (1978). This each juror clearly did. We hold that this procedure was substantially in accord with the requirements of G.S. 15A-1238 and note in passing that defendant made no request at

trial that the Clerk be instructed to be more specific in the questions propounded to the jurors. *See id.*

No error.

Judges MARTIN (Robert M.) and HILL concur.