STATE OF NORTH CAROLINA v. ELIZABETH REBECCA PALMER, Defendant

No. COA05-148

(Filed 20 December 2005)

**Embezzlement— motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motions to dismiss embezzlement charges, because: (1) defendant never had lawful possession of the incoming checks at issue nor was she entrusted with the checks by virtue of a fiduciary capacity; (2) defendant acquired the incoming checks through misrepresentation by setting up a post office box, using another employee's name and signature, and directing incoming checks to that address without authorization; (3) even though defendant had access to all incoming checks for both companies, she was not authorized to direct incoming checks to the post office box she

opened, nor was opening the mail or making out deposit slips for incoming checks one of defendant's duties; and (4) the appropriate charges against defendant should have been larceny.

Appeal by Defendant from judgment entered 3 March 2004 by Judge E. Penn Dameron in Superior Court, Buncombe County. Heard in the Court of Appeals 1 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Ann W. Matthews, for the State.*

*K.E. Krispen Culbertson, for defendant-appellant.*

WYNN, Judge.

To be guilty of embezzlement, a defendant "must have been entrusted with and *received into his possession lawfully* the personal property of another[.]" *State v. Weaver*, 359 N.C. 246, 255, 607 S.E.2d 599, 604 (2005) (citation omitted) (emphasis in original). Defendant contends that the State's evidence established the crime of larceny (for which she was not charged), not embezzlement, because the evidence failed to show that she had acquired lawful possession of her employer's property. Since the record shows Defendant neither took lawful possession of her employer's property nor was she entrusted with the property by virtue of a fiduciary capacity, we hold there was insufficient evidence to support the charges of embezzlement.

The evidence at trial tended to show that in June 2002, Palmer Instruments, Inc. and Wahl Instruments, Inc. employed Defendant Elizabeth Rebecca Palmer as an account manager for the two separate companies, owned by Stephen Santangelo, which manufacture temperature measuring devices.

Defendant's duties as account manager included supervising two other employees in accounts payable and accounts receivable, acting as the computer administrator, and conducting payroll duties. Defendant's duties also included seeking out and looking at any financial document—including incoming checks, deposits, bank statements, and other financial documents. Pam Rogers, executive assistant and secretary of Palmer Instruments and Wahl Instruments, testified that Defendant had access to checks that were coming into the business from other companies. Ms. Rogers's duties included opening the mail, processing the checks, and making out deposit slips.

STATE v. PALMER

[175 N.C. App. 208 (2005)]

On 3 March 2003, Defendant applied for and opened a post office box under the name of Palmer Instruments. The application listed Pam Rogers, corporate secretary, as the person opening the post office box; Defendant forged Ms. Rogers's signature on the application. The driver's license number on the application matched Defendant's driver's license number on her employment application. Defendant had no authority to open the post office box in the company's name or sign Ms. Rogers's name.

On 5 March 2003, Defendant, without authorization, met with Karen Ferrell (a financial services advisor at Central Carolina Bank) and opened business bank accounts for Palmer Instruments and Wahl Instruments. Ms. Ferrell prepared corporate resolutions, signature cards, and internet banking forms for both companies and gave them to Defendant to acquire the appropriate signatures. All the forms were returned to Ms. Ferrell with purported signatures of Ms. Rogers and Mr. Santangelo; however, both testified at trial that the signatures were not theirs. Palmer Instruments corporate seal was also affixed to the resolutions and signature cards. Mr. Santangelo, who kept the seals, testified that he did not affix the seal to the resolutions or signature cards.

Central Carolina Bank's processing center found that Palmer Instruments corporate seal had been placed on Wahl Instruments resolution and signature card, and returned both to Ms. Ferrell for correction. Ms. Ferrell called Ms. Rogers who said she was not aware of any accounts with Central Carolina Bank. Ms. Rogers transferred the call to Defendant who told Ms. Ferrell to send the new forms to the post office box she opened. The forms were never returned to Ms. Ferrell. Defendant explained to Ms. Rogers that Ms. Ferrell had mistakenly opened a corporate account after she had left some papers in Ms. Ferrell's office.

Upon opening the Palmer Instruments account at Central Carolina Bank, Defendant deposited a check made payable to Palmer Instruments in the amount of $1573.81. Defendant also deposited a check made payable to Wahl Instruments in the amount of $2116.24 into the Wahl Instruments account at Central Carolina Bank. On 12 March 2003, Defendant deposited a check made payable to Palmer Instruments in the amount of $1105.17 into the Palmer Instruments account at Central Carolina Bank. Defendant also deposited a check made payable to Wahl Instruments in the amount of $127.71 into the Wahl Instruments account at Central Carolina Bank. Photographs from the bank surveillance video camera show

STATE v. PALMER

[175 N.C. App. 208 (2005)]

Defendant present at the bank on 5 and 12 March 2003, the dates written on the deposit slips.

Between 10 and 14 March 2003, Defendant wrote checks to herself from the Palmer Instruments and Wahl Instruments accounts at Central Carolina Bank; forged Ms. Rogers's signature on the checks; and deposited the checks in her personal bank account at the State Employees' Credit Union. From the Palmer Instruments account Defendant wrote herself a check for $1300.00. From the Wahl Instruments account Defendant wrote herself a check for $1500.00 and a check for $620.00.

On 25 March 2003, Ms. Ferrell called Mr. Santangelo to inform him that he still needed to sign and return the resolution and signature cards for Wahl Instruments' account. Mr. Santangelo told Ms. Ferrell that the companies did not have bank accounts at Central Carolina Bank, and she informed him that both companies had active accounts. Mr. Santangelo requested and obtained copies of all bank records for both accounts, including the resolutions, signature cards, deposit slips, and checks payable to Defendant. Mr. Santangelo searched Defendant's office and found Palmer Instruments' corporate seal in Defendant's desk drawer. Mr. Santangelo testified that he kept both companies' seals in his desk in a locked drawer, but he often unlocked the desk and left the room for brief periods of time.

Defendant presented no evidence at trial. A jury found Defendant guilty of four counts of uttering forged instruments and five counts of embezzlement. The trial court sentenced Defendant to six to eight months imprisonment for the uttering forged instrument charges and one charge of embezzlement. The trial court sentenced Defendant to a suspended sentence and placed Defendant on supervised probation for thirty-six months for the remaining four embezzlement charges to begin at the expiration of the active sentence.

---

On appeal to this Court, we dispositively agree with Defendant's contention that the trial court erred in denying her motions to dismiss the embezzlement charges.[1]

---

1. When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004) (citing *State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *cert. denied;* —— U.S. ——, 163 L. Ed. 2d 79 (2005). If we find that "substantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator, it is proper for the trial court to [have denied] the motion." *Id.* (citing *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983)). "Substantial evidence is

To convict a defendant of embezzlement

four distinct propositions of fact must be established: (1) that the defendant was the agent of the prosecutor, and (2) by the terms of his employment had received property of his principal; (3) that he received it in the course of his employment; and (4) knowing it was not his own, converted it to his own use.

*State v. Block*, 245 N.C. 661, 663, 97 S.E.2d 243, 244 (1957) (internal citations omitted); *State v. McCaskill*, 47 N.C. App. 289, 292, 267 S.E.2d 331, 333, *disc. review denied*, 301 N.C. 101, 273 S.E.2d 306 (1980); *see also* N.C. Gen. Stat. § 14-90 (2004). Defendant argues that the State failed to present sufficient evidence as to the second and third prong.

To be guilty of embezzlement, a defendant "must have been entrusted with and *received into his possession lawfully* the personal property of another[.]" *Weaver*, 359 N.C. at 255, 607 S.E.2d at 604 (citation omitted) (emphasis in original). Defendant cites *State v. Keyes*, 64 N.C. App. 529, 307 S.E.2d 820 (1983), to support her argument that she never had lawful possession of the incoming checks at issue. In *Keyes*, the defendants were employees at a plant with access to all the materials in the plant, but were never given the authority to sell any of the plant's materials. *Id.* at 532, 307 S.E.2d at 822. The defendants sold materials from the plant and kept the profits for their personal use. This Court found that the "defendants may have had access to machinery parts, but there is no evidence that they received machinery parts by the terms of their employment. There is a difference between having access to property and possessing property in a fiduciary capacity." *Id.* This Court held that the defendants never took lawful possession of, or were entrusted with the parts. *Id.*, 307 S.E.2d at 823.

In the recently decided case of *Weaver*, our Supreme Court reversed the defendant's convictions for aiding and abetting embezzlement and conspiracy to embezzle. The defendant in that case was plant manager of a family business and his wife, Kimberly, was a receptionist in training to be an accounting manager at two of the family businesses. *Weaver*, 359 N.C. at 248, 607 S.E.2d at 600. Kimberly's duties "included entering payables, making bank deposits, and entering data." *Id.* However, Kimberly had no authority to write

---

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)).

checks from the company and was not authorized to use the signature stamp unless given explicit permission on a case-by-case basis. *Id.* The defendant instructed Kimberly to misappropriate funds from the companies for personal use. *Id.* at 249, 607 S.E.2d at 600-01. Kimberly used counterchecks and checks earmarked for shredding, wrote checks, used the signature stamp, and used the checks for personal expenses. *Id.*, 607 S.E.2d at 601. Our Supreme Court concluded that while Kimberly "had *access* to the checks and signature stamp by virtue of her status as an employee . . ., we cannot say, based on these facts, that Kimberly Weaver's possession of this property was *lawful* nor are we persuaded that this property was under Kimberly Weaver's care and control as required by N.C.G.S. § 14-90." *Id.* at 256, 607 S.E.2d at 605.

In this case, like in *Keyes* and *Weaver,* Defendant never took *lawful* possession of the incoming checks, nor was she entrusted with the checks by virtue of a fiduciary capacity. *Id.* Instead, Defendant acquired the incoming checks through misrepresentation, by setting up a post office box, using Ms. Rogers's name and signature, and directing incoming checks to that address without authorization. Even though Defendant had access to all incoming checks for both Palmer Instruments and Wahl Instruments, she was not authorized to direct incoming checks to the post office box she opened. Nor was opening the mail or making out the deposit slips for incoming checks one of Defendant's duties. Even though Defendant generally had access to incoming checks, she was not in lawful possession nor was she entrusted with these particular checks as a fiduciary, as she obtained the checks through misrepresentation. *See Weaver,* 359 N.C. at 256, 607 S.E.2d at 605; *Keyes,* 64 N.C. App. at 532, 307 S.E.2d at 823.

In sum, the appropriate charges against Defendant should have been larceny. In this case as in *Weaver,* "[b]ecause the State cannot make the 'allegation[s] and proof correspond,'" we must conclude that the trial court erred in denying Defendant's motions to dismiss the embezzlement charges. *Weaver,* 359 N.C. at 257, 607 S.E.2d at 605. As we reverse Defendant's convictions for embezzlement, we do not need to address her remaining assignments of error.

Reversed.

Judges McGEE and GEER concur.