STATE OF NORTH CAROLINA
v.
ANNA MARGARET BATTLE, Defendant.
No. COA08-1492.
Court of Appeals of North Carolina.
Filed November 17, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Terence D. Friedman, for the State.
Mills & Economos, L.L.P., by Larry C. Economos, for defendant-appellant.
GEER, Judge.
Defendant Anna Margaret Battle appeals her conviction of 18 counts of embezzlement from her former employer, Cato Stores, Inc. In her sole argument on appeal, defendant contends that the trial court should have granted her motion to dismiss. Based on our review of the record, we hold that the State presented sufficient evidence for each count of embezzlement and, therefore, the trial court properly denied the motion to dismiss as to those 18 counts.

Facts
The State's evidence tended to show the following facts. From December 2006 to May 2007, defendant worked as an assistant manager at a Cato store in Goldsboro, North Carolina. When a customer made a purchase at a Cato store, the cash register printed a receipt that showed the store number, the register number, the transaction number, and the date of the sale.
If a customer desired to return a purchased item, the employee processing the return was required to fill out a printed form called a "Universal Form." Under Cato's policy, the employee first scanned the "SKU number" printed on the back of the tag of the merchandise being returned to verify that it matched the SKU number on the original sales receipt. Because the returned merchandise would have the same SKU number as unsold items of the same type that were still in the store, it was possible for an employee to scan the SKU number from an unsold item in order to suggest that an item had been returned.
An employee properly processing the return of merchandise was required to verify that the customer had a sales receipt and to copy onto the Universal Form the transaction number from that receipt and the date of purchase, as well as the reason for the return and the customer's name, address, and phone number. The customer was supposed to sign the Universal Form before receiving a refund. Although not required by Cato's policy, employees were encouraged to attach the original sales receipt to the completed Universal Form. When the original purchase was paid for by cash, Cato issued a cash refund.
If the employee processing the return was not a manager, he or she was required to get a manager to witness the return and co-sign the Universal Form with the employee. In addition, because only managers had the key to open the cash registers, managers were responsible for giving the customers any cash refunds. Although a manager processing a return was also supposed to obtain the signature of another manager or employee on the Universal Form, Cato allowed managers to complete a return without a witness if no other employee was available.
As part of its regular auditing process, Cato reviewed the losses from each store. During the period 1 March 2007 to 10 June 2007, the Goldsboro store lost approximately $3,429.00 in inventory. A loss prevention officer questioned defendant about certain returns she had processed. Defendant walked out of the interview when the officer accused her of stealing.
The Goldsboro store manager and Cato's district manager pulled the cash register tapes from 1 March 2007 to 10 June 2007 and compared them to the Universal Forms completed by defendant. Only a few of the Universal Forms completed by defendant were also signed by a co-employee or had sales receipts attached. The transaction numbers on many of defendant's Universal Forms  which were supposed to have been copied directly from the customers' sales receipts  did not match any actual sales transactions at Cato's stores on the dates that defendant's forms indicated that the original sale had taken place. One of the Universal Forms filled out by defendant stated that the returned item had been purchased on Easter, a day when all of Cato's stores are closed.
In addition, many of the customer addresses written down by defendant on the Universal Forms were non-existent. Some of the zip codes defendant entered on the forms did not correspond to the city indicated in the customer's supposed address. The returns reflected in the Universal Forms containing false information all involved cash refunds, totaling $1,333.67.
Defendant was subsequently indicted for 24 counts of embezzlement, with the indictment alleging a total amount embezzled of $1,333.67. At the close of the State's evidence, defendant moved to dismiss all 24 counts. After reviewing the exhibits and testimony, the trial court dismissed six of the counts, but denied the motion as to the remaining 18 counts.
Defendant testified on her own behalf and admitted processing the returns and filling out the Universal Forms at issue. She denied, however, falsifying the information on the Universal Forms and asserted that there "[w]as always a customer there when [she] made a return[.]" She stated that, with respect to the customer contact information, she simply wrote down what the customer told her. Although the returns all involved cash refunds, defendant claimed that she gave the cash to the customer and never took the money for herself.
The jury convicted defendant of all 18 remaining counts. The trial court sentenced defendant to two consecutive presumptive-range sentences of eight to 10 months imprisonment, but suspended the sentences and imposed 36 months of supervised probation. The trial court also ordered defendant to pay restitution to Cato in the amount of $1,024.23. Defendant timely appealed to this Court.

Discussion
Defendant's sole argument on appeal is that the trial court should have dismissed all 24 counts of embezzlement for insufficient evidence. A defendant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).
"To convict a defendant of embezzlement `four distinct propositions of fact must be established: (1) that the defendant was the agent of the prosecutor, and (2) by the terms of his employment had received property of his principal; (3) that he received it in the course of his employment; and (4) knowing it was not his own, converted it to his own use.'" State v. Palmer, 175 N.C. App. 208, 212, 622 S.E.2d 676, 679 (2005) (quoting State v. Block, 245 N.C. 661, 663, 97 S.E.2d 243, 244 (1957)); N.C. Gen. Stat. § 14-90 (2007). Defendant only challenges the sufficiency of the evidence with respect to the fourth element, arguing that "the State's evidence was insufficient as to all twenty-four counts of [the] indictment to establish the required element that [defendant] converted or misapplied any return monies to her own use."
Defendant admitted, with respect to the transactions at issue, that she withdrew cash from the cash register, although she claimed that she gave that cash to the customers. The State, however, presented evidence from which the jury could find that these transactions never really occurred: the transaction numbers supposedly identifying the sale resulting in the return and the information identifying the customers who supposedly received the cash refund were fictitious. Based on this evidence  that defendant was falsely completing Universal Forms for cash refunds and was taking cash from the cash register based on those Universal Forms  a reasonable juror could conclude that defendant was engaging in an embezzlement scheme using fictitious returns of merchandise in order to obtain Cato's cash.
In State v. Sutton, 53 N.C. App. 281, 282, 280 S.E.2d 751, 753, disc. review denied, 303 N.C. 711 (1981), the defendant was an assistant manager at a fast food restaurant whose duties included ringing up sales at a cash register. Several witnesses testified that they saw the defendant operate the register in a manner that caused items being purchased to be listed on the register's tape, but no sale would be recorded. Id. at 282-83, 280 S.E.2d at 753. The defendant would take the customer's money, open the cash register manually, and deposit the cash, even though the register had recorded no sale. As a result, the register would take in more cash than the amount reflected on the register's tape for cash sales. Id. at 283, 280 S.E.2d at 753. The defendant, however, never reported any surplus on his register. Id. The registers also kept track of inventory and during the period involved, inventory was being depleted that the registers did not indicate as having been sold. Id. Another manager examined the register tape for the register the defendant had used and when he compared the un-totaled items on the tape to the actual shortages in inventory, he "found that `they were almost identical.'" Id.
On appeal, the defendant in Sutton argued, as defendant does here, that there was insufficient evidence of conversion or misappropriation of the restaurant's funds. In holding that there was sufficient evidence that the defendant misappropriated the money to send the case to the jury, this Court explained:
The State presented evidence that defendant improperly operated the cash register so that it would develop a cash surplus for the days for which he was indicted, but that he did not report any surplusage to the manager and he failed to note a surplus on the work sheets. There was also evidence that inventory was leaving the store unaccounted for. From this evidence the jury could reasonably infer that defendant sold this missing inventory, generating a secret surplus, and that this surplus was going into defendant's pocket.
Id. at 286, 280 S.E.2d at 754.
Defendant, in this case, argues that Sutton is distinguishable because the State in Sutton presented testimony from witnesses who actually saw the defendant operate the cash register in a manner that would generate the surplus cash. The State in Sutton did not, however, present any evidence that anyone had seen the defendant take the surplus cash. In this case, the State similarly established that defendant improperly completed Universal Forms using fictitious information in a manner that resulted in the removal of cash from a cash register, although the State did not offer evidence that defendant in fact pocketed the cash. Just as the Court in Sutton concluded that the jury could reasonably infer that the defendant  whom the State had shown was employing a strategy designed to result in surplus cash  had taken that surplus cash, so too a jury, in this case, could reasonably infer that defendant took the cash that resulted from her falsified Universal Forms.
Defendant also argues that in Sutton the shortage in actual inventory matched the amounts that the State alleged the defendant took, while, in this case, the Cato manager reported an inventory loss of $3,429.00 compared to an alleged embezzlement amount of $1,333.67. Defendant also points out that the shortages in Sutton ceased upon the defendant's termination and that the State had presented evidence that the defendant had substantial amounts of money not explained by his job. None of this evidence was, however, relied upon by this Court in concluding that the motion to dismiss was properly denied. While this evidence may have presented a stronger case in Sutton, its absence did not preclude a reasonable jury from finding that defendant had pocketed Cato's cash through manipulation of the cash refund process.
Finally, defendant argues that "the State presented no evidence of the total of all returns in the entire universe of returns that were handled by all employees of the Cato store during the period of time of the auditing loss as compared to the total number of returns culled from the entire universe of returns that had customer identifying errors." According to defendant, "[i]n the absence of this additional evidence, the evidence presented of [defendant's] twenty-four returns with customer identifying errors is without sufficient correlating evidence to weigh the strength of any inference of guilt."
To the extent that defendant is arguing that the State was obligated to show that other employees had not also made similar errors in completing the Universal Forms in order to warrant the inference that defendant was acting intentionally, the State did present such evidence. Cato's district manager testified that neither she nor anyone that worked under her had, in filling out a Universal Form, "written in the wrong numbers" in the way that defendant had. In any event, this argument goes to the weight and credibility of the State's evidence  questions for the jury. See Powell, 299 N.C. at 99, 261 S.E.2d at 117 ("`When the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.'" (quoting State v. Rowland, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965))); State v. Boomer, 33 N.C. App. 324, 329, 235 S.E.2d 284, 288 ("What is substantial evidence is for the court to decide, but what the evidence proves or fails to prove is for the jury, it being the jury's province to pass on circumstantial evidence and determine whether it excludes every other reasonable hypothesis."), cert. denied, 293 N.C. 254, 237 S.E.2d 536 (1977).
Defendant also maintains that all 24 counts should have been dismissed because it is "just as plausibl[e]" that other Cato employees who "had access to cash registers for returns" could have embezzled the money or that shoplifters stole the inventory. This contention, going to the weight of the evidence, was also rejected in Sutton, where this Court held: "It [is] not necessary for the State to establish defendant's control and possession of the property to the exclusion of all others." 53 N.C. App. at 286, 280 S.E.2d at 754. See also State v. Barbour, 43 N.C. App. 143, 148, 258 S.E.2d 475, 478-79 (1979) ("The court is not required to find that the evidence excludes every reasonable hypothesis of innocence in denying a defendant's motion to dismiss."). Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss with respect to the 18 counts of embezzlement submitted to the jury.
No Error.
Judges ROBERT C. HUNTER and STEELMAN concur.
Report per Rule 30(e).